PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3905
_____

GBFOREFRONT, L.P.,
                                        Appellant

v.

FOREFRONT MANAGEMENT GROUP, LLC;
FOREFRONT CAPITAL MANAGEMENT, LLC;
FOREFRONT CAPITAL MARKETS, LLC;
FOREFRONT ADVISORY, LLC;
PENNY WEINER; GEOFFREY BLOCK
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-11-cv-07732)
District Judge:  Hon. Mitchell S. Goldberg
_____

Argued
January 11, 2018

Before:  JORDAN and ROTH, *Circuit Judges*, and
MARIANI,* District Judge.

(Filed April 19, 2018)
_____

Kenneth B. Danielsen, Esq.
Christopher Nucifora, Esq.   [ARGUED]
Kaufman Dolowich & Voluck
21 Main Street, Suite 251
Hackensack, NJ   07601

Eileen M. Ficaro, Esq.
Kaufman Dolowich & Voluck
1777 Sentry Park West
Dublin Hall, Suite 100
Blue Bell, PA   19422

Gary P. Lightman, Esq.
Glenn A. Manochi, Esq.
Lightman & Manochi
1520 Locust Street, 12th Floor
Philadelphia, PA   19102
        *Counsel for Appellant*

_____

        * The Honorable Robert D. Mariani, United States
District Court Judge for the Middle District of Pennsylvania,
sitting by designation.

2

Sean L. Corgan, Esq.
Francis J. Grey, Jr., Esq.
Ricci Tyrrell Johnson & Grey
1515 Market Street, Suite 700
Philadelphia, PA   19102

Gary M. Fellner, Esq.   [ARGUED]
Porzio Bromberg & Newman
156 West 56th Street, Suite 803
New York, NY   10019
        *Counsel for Appellees*

———————————

OPINION OF THE COURT

———————————

JORDAN, *Circuit Judge*.

This case requires us to consider whether, in assessing diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332(a), the citizenship of a traditional trust is determined differently than that of a business trust.  In light of the Supreme Court's decision in *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016), we conclude that the citizenship of a traditional trust is based only on the citizenship of its trustee.  In so holding, we acknowledge that *Americold Realty* abrogates part of our opinion in *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192 (3d Cir. 2007), which stated that it was unnecessary to distinguish between types of trusts when determining diversity jurisdiction.  *Id.* at 198 n.10, 205.

3

Based on the distinction we recognize today between traditional trusts and business trusts, we will vacate the District Court order dismissing this case for lack of jurisdiction. Because the record on appeal is insufficient for us to proceed further, we will remand the case with instructions to determine whether the trusts at issue are of the traditional or business variety and whether there is diversity jurisdiction. We also instruct the District Court to give leave to further amend the complaint within a reasonable time to cure defective jurisdictional allegations.

## I.  BACKGROUND

Following an investment opportunity gone awry, the details of which are immaterial at this point, GBForefront, L.P., filed suit in the District Court against Forefront Management Group, LLC ("FMG"); Forefront Capital Management, LLC; Forefront Capital Markets, LLC; and Forefront Advisory, LLC, (collectively, the "Defendants") for breach of contract and unjust enrichment. Initially, GBForefront, which is a limited partnership, had sued only FMG, a limited liability company (or "LLC"), and alleged that the Court had diversity jurisdiction under 28 U.S.C. § 1332 because, among other things, GBForefront's general partner was an LLC whose sole member was a "resident" of Pennsylvania and "none of [FMG's] members are residents of Pennsylvania."[1]  (J.A. at 50, 719-20.)

---

[1] The pertinent language of 28 U.S.C. § 1332 is, along with a brief description of diversity jurisdiction, provided in Section II.A, *infra*.

The operative pleading is the first amended complaint. In that complaint, GBForefront refers to a "principal" of both

4

After years of litigation, GBForefront accepted an offer of judgment made by the Defendants pursuant to Federal Rule of Civil Procedure 68. The District Court accordingly entered judgment in favor of GBForefront and against the Defendants. Later, when a difficulty arose with satisfaction of the judgment, the parties submitted a joint motion to amend the judgment to effectuate a new settlement agreement. Pursuant to the terms of that agreement, GBForefront and the Defendants signed a consent judgment against Forefront Capital Markets, and they agreed that, in the event of any default by the Defendants in satisfying the settlement, GBForefront could immediately file a motion to enter that consent judgment. The District Court

---

GBForefront General, LLC, and WFP2, LP. (J.A. at 720.) But in its initial complaint, GBForefront referred to a "member" of those entities. (J.A. at 50.) We understand GBForefront to be referring to the sole member of GBForefront's general partner, GBForefront General, LLC, and to the sole member of Weiner 2 General LLC, the general partner of GBForefront's limited partner WFP2, LP.

At the time the complaint was filed, GBForefront, L.P., was a limited partnership composed of a general partner, GBForefront General, LLC, and a limited partner, WPF2, LP. The sole member of GBForefront General was Warren Weiner, alleged to be a resident of Pennsylvania. Limited partner WPF2 itself was a limited partnership composed of a general partner, Weiner 2 General LLC, and a series of five trusts as limited partners. The sole member of Weiner 2 General LLC was Warren Weiner. Those trusts were established for each of Warren Weiner's five grandchildren with Warren Weiner designated as the trustee of each trust. At least three of those grandchildren lived in New Jersey at the time the complaint was filed.

5

granted the joint motion, and everyone thought the case was over.

It was not. GBForefront soon alleged that "[c]ertain Forefront entities"[2] had defaulted on the terms of the settlement agreement, and it thus moved for entry of the consent judgment. (J.A. at 923). With the assistance of new counsel, the Defendants cross-moved to dismiss the case for lack of subject matter jurisdiction, claiming that GBForefront had not adequately pled the citizenship of FMG and that complete diversity was lacking when the lawsuit was initially filed. The parties briefed the issue of diversity jurisdiction, but then came a twist. The Supreme Court issued its opinion in *Americold Realty*, specifically dealing with the citizenship of trusts.

After holding a hearing and considering the parties' supplemental briefing on the new precedent, the District Court granted the Defendants' motion to dismiss because the Court determined the membership of GBForefront included at least three trusts whose beneficiaries were citizens of New Jersey[3] and FMG also had a member who was a citizen of New Jersey.[4]

---

[2] As the District Court noted, it is unclear which entities GBForefront was referring to.

[3] *See supra* n.1.

[4] GBForefront did not plead the citizenship of the beneficiaries and member in its complaint. *See infra* Section II.B. The District Court said that the parties had agreed at the hearing to those factual statements regarding the parties' citizenship. But nothing was said or agreed upon at the hearing

6

The Court reasoned that *Emerald Investors* instructed it not to distinguish between traditional trusts and business trusts for jurisdictional purposes, and that *Americold Realty* required the citizenship of a business trust to include all its members, including its beneficiaries.

GBForefront timely appealed the dismissal.

## II.    DISCUSSION[5]

On appeal, GBForefront argues that the *Americold Realty* holding described by the District Court applies only to business trusts, while the trusts composing GBForefront are traditional trusts whose citizenship is based only on the citizenship of their trustees. The Defendants of course disagree, asserting that *Americold Realty* requires that the citizenship of trust beneficiaries always be accounted for when determining diversity jurisdiction. The Defendants further

---

regarding the citizenship of Warren Weiner, the trustee of several of the trusts at issue. *See supra* n.1.

[5] The parties dispute whether the District Court had jurisdiction. GBForefront maintains that the District Court had jurisdiction under 28 U.S.C. § 1332 because there was diversity of citizenship. The Defendants contend that the District Court lacked any jurisdiction. We have jurisdiction pursuant to 28 U.S.C. § 1291. "Our review of the District Court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) is *de novo*." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).

7

assert that GBForefront comprises a series of trusts whose beneficiaries' citizenship prevents subject matter jurisdiction based on diversity. The resolution of this jurisdictional dispute accordingly turns on the Supreme Court's *Americold Realty* opinion. In our view, that case instructs that, for purposes of diversity jurisdiction, the citizenship of a traditional trust must be determined by the citizenship of its trustee alone.[6]

## A.    General Principles of Diversity Jurisdiction

It is fundamental that federal courts must have subject matter jurisdiction before reaching the merits of a case, and, as its name indicates, jurisdiction based on diversity of citizenship requires that opposing parties be citizens of diverse states. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). Under the dictates of 28 U.S.C. § 1332(a), for diversity jurisdiction to exist, "no plaintiff [may] be a citizen of the same state as any defendant[,]" and the amount in controversy must exceed $75,000.[7] *Id.* at 419. A challenge to

---

[6] For simplicity, we express our holding in the singular with respect to the trustee, but, of course, nothing in our decision here limits the number of trustees or beneficiaries that a trust may have. "Obviously[,] if there are more trustees or beneficiaries[,] then the [rule] is applied to all the trustees and beneficiaries." *Emerald Investors*, 492 F.3d at 201 n.12. Thus, where a traditional trust has multiple trustees, we consider it to have the citizenship of each of its trustees.

[7] Section 1332(a) provides, in relevant part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

8

subject matter jurisdiction may be raised at any point in the litigation, and, when the jurisdictional basis is diversity of citizenship, diversity is assessed as of the time the complaint was filed. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004).

Most rules for determining the citizenship of natural persons and business entities are well-established. *Zambelli Fireworks*, 592 F.3d at 419. The citizenship of a natural person is the state where that person is domiciled. *Id.* The citizenship of a corporation is both its state of incorporation and the state of its principal place of business. *Id.* A partnership, as an unincorporated business entity, assumes the citizenship of all its partners. *Id.* Likewise, a limited liability company is a citizen of all the states of its members. *Id.* at 420. But, as this case demonstrates, there are still some rules in flux. Hence the challenge to jurisdiction we address here.

When a party raises an issue regarding a jurisdictional defect, courts must determine whether the challenge is a facial attack or a factual attack. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). "A facial attack ... is an argument that considers a claim on its face and asserts that it is insufficient to invoke subject matter jurisdiction of the court because, for example, ... there is no indication of a diversity of citizenship among the parties[.]" *Id.* at 358.

"A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *Id.* To resolve

---

$75,000, exclusive of interest and costs, and is between ... citizens of different States ... ."

9

a factual challenge, the "[c]ourt may look beyond the pleadings to ascertain the facts[.]"  *Id.*  Again, "for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking."  *Id.*  The defendant has the initial burden of production to raise a factual challenge.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 345 & n.2 (3d Cir. 2011) (distinguishing between burden of proof and burden of production, in that the latter "determines which party must first present evidence sufficient to raise a given issue as pertinent").  Once a factual challenge has been raised, the plaintiff then has the burden of proof to establish diversity jurisdiction by a preponderance of the evidence.  *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 288-89 (3d Cir. 2006).

The Defendants here mounted both a facial challenge and a factual challenge to GBForefront's assertion of diversity jurisdiction.

### B.      Facial Challenge To Diversity Jurisdiction

In the District Court, the Defendants' facial challenge was "that GBForefront never alleged the citizenship of the members of the LLC defendant entities" in its complaint. (J.A. at 6.)  The Court recognized that issue but did not resolve it because the Court concluded that diversity jurisdiction was lacking based on the Defendants' factual challenge.[8]   On

_____

[8] Although the District Court said that it was addressing a "facial attack[,]" the Court's analysis actually addressed the Defendants' factual attack because the Court considered information outside the pleadings, as agreed to by the parties (J.A. at 8).  The factual attack ultimately came down to a

10

appeal, the parties have not addressed the facial challenge at all. We nevertheless have an independent obligation to address it.

The Defendants are indeed correct that GBForefront failed to plead the citizenship of FMG's members. It failed even to plead its own citizenship. Instead, GBForefront, a limited partnership, alleged that Warren Weiner, who was the sole member of the general partner of GBForefront and also the sole member of the general partner of the limited partner of GBForefront, was a "resident" of Pennsylvania and that "none of [FMG's] members are residents of Pennsylvania"; nothing is mentioned about citizenship.[9] (J.A. at 719-20); *see supra* note 1. Alleging residency alone is insufficient to plead diversity of citizenship, *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 219 n.4 (3d Cir. 2012), while changing allegations of residency to ones of citizenship fortifies a complaint against a facial attack on jurisdiction, assuming there are no other obvious flaws. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 (3d Cir. 2015) ("A State X plaintiff may therefore survive a facial challenge by alleging that none of the defendant association's members are citizens of State X.").

---

question of law on how to determine the citizenship of certain trusts.

[9] In addition to not pleading citizenship, we also notice that the complaint lacks any reference to the identities of the limited partners of WFP2, which was the limited partner of GBForefront. Other evidence in the record on appeal indicates that the limited partners of WFP2 were five trusts and that Warren Weiner was the trustee of each of those trusts.

11

The clear pleading problem here may be amenable to easy solution. "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653; *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) (explaining that § 1653 allows appellate courts to remedy inadequate jurisdictional allegations); *Scattergood v. Perelman*, 945 F.2d 618, 627 (3d Cir. 1991) ("[Section 1653] permits amendments broadly so as to avoid dismissal of diversity suits on technical grounds." (citation omitted)). Pursuant to that provision, we may allow the plaintiff to amend its complaint before us when the factual record on appeal establishes that complete diversity exists. *McCurdy v. Greyhound Corp.*, 346 F.2d 224, 225 n.1 (3d Cir. 1965). Alternatively, we may instruct the district court on remand to allow the plaintiff to remedy its inadequate allegations of diversity jurisdiction. *Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 222 n.13, 232 (3d Cir. 1999); *see Barclay Square Props. v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis*, 893 F.2d 968, 969-70 (8th Cir. 1990) (remanding with instructions to allow the plaintiff to amend its complaint when the appellate court cannot determine complete diversity based on the record). Considerations of efficiency, fairness, and judicial economy often counsel against dismissal of an action at a late stage of litigation when a simple pleading error can be corrected. *Zambelli Fireworks*, 592 F.3d at 420-21.

GBForefront's diversity allegations appear to be nothing more than inartful drafting on a technical point, albeit a serious one. Accordingly, because the factual record on appeal is insufficient for us to determine whether complete diversity existed when the complaint was filed, *see infra* Section II.C, we instruct the District Court to give GBForefront

the opportunity pursuant to 28 U.S.C. § 1653 to remedy its defective jurisdictional allegations by filing, with the District Court and within a reasonable time, a motion with an appropriately amended complaint.[10]

## C.     Factual Challenge To Diversity Jurisdiction

We turn next to the Defendants' factual challenge to diversity jurisdiction, which is simply that complete diversity was lacking when the lawsuit was filed.

When a business entity consists of constituent parts that are also business forms, the inquiry into jurisdictional citizenship "can become quite complicated. ... [T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." *Lincoln Benefit Life Co.*, 800 F.3d at 105 n.16 (internal quotation marks and citation omitted). This is such a case, with trusts serving as limited partners of a limited partnership that is in turn a limited partner of GBForefront. *See supra* note 1 (describing GBForefront's ownership structure). And that is on just one side of the "v." The Defendants' factual challenge hinges on the proper interpretation of *Americold Realty* in determining the citizenship of the several trusts that are layered within GBForefront.

---

[10] In addition to alleging citizenship, not residency, the amended complaint must add the identities and citizenship of the limited partners of WFP2, which, if trusts, must also include their trustees. If such amendment would destroy diversity, the complaint must be dismissed.

### 1. Jurisdictional Citizenship When A Trust Is Involved In A Lawsuit

Through a progression of cases, the Supreme Court has established three rules for determining jurisdictional citizenship when a trust is involved in a lawsuit.

First, in *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980), the Court said that, when a trustee sues or is sued on behalf of a trust, the citizenship of the trust is based on that of the trustee alone. *Id.* at 465-66; *see also Americold Realty*, 136 S. Ct. at 1016. In such cases, trustees may invoke diversity jurisdiction based on their own citizenship, without accounting for the citizenship of the trust's beneficiaries. *Navarro*, 446 U.S. at 465-66. In *Navarro*, eight individual trustees of a trust organized under Massachusetts law sued a savings association in federal court on a breach of contract claim. *Id.* at 459. The citizenship of the trustees differed from that of the savings association, but some of the trust's beneficiaries were citizens of the same state as the savings association. *Id.* at 460. Because the trustees who initiated the lawsuit "possesse[d] certain customary powers to hold, manage, and dispose of" trust properties, the trustees were permitted "to sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.* at 464-66. Although the trust in some respects more closely resembled a business association than a traditional trust, the Supreme Court said that when trustees initiate a lawsuit in their own name or are the target of a suit, courts consider only the citizenship of the trustees for purposes of determining diversity jurisdiction. *Id.* at 465-66; *see also Americold Realty*, 136 S. Ct. at 1016.

14

Second, in *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), the Court held that, when an artificial legal entity besides a corporation sues or is sued, diversity is determined by looking to the citizenship of the entity's members. *Id.* at 195; *see also Americold Realty*, 136 S. Ct. at 1016. In that particular case, a limited partnership brought a contract dispute to federal court, based on diversity jurisdiction. *Carden*, 494 U.S. at 186. One limited partner of the partnership was a citizen of the same state as that of a defendant. *Id.* The limited partnership argued that jurisdiction should be determined solely on the basis of the citizenship of its general partners, who "have exclusive and complete management and control of the operations of the partnership[,]" akin to the approach taken with the trust at issue in *Navarro*. *Id.* at 192 (citation omitted). The Supreme Court declined to extend its reasoning from *Navarro*, though, saying that "*Navarro* had nothing to do with the citizenship of the 'trust,' since it was a suit by the trustees in their own names." *Id.* at 192-93. *Carden*, in contrast, concerned determining the citizenship of "an artificial entity, [*i.e.*, a limited partnership,] suing or being sued[.]" *Id.* at 192. Ultimately, the Court held that the citizenship of a limited partnership is based on the citizenship of all its partners; that is, the citizenship of each general and limited partner. *Id.* at 195-96.

Finally, in *Americold Realty*, the Supreme Court decided that the citizenship of a business trust includes the citizenship of all its members. 136 S. Ct. at 1016. The dispute involved a group of corporations whose goods perished in a warehouse fire. *Id.* at 1014. They brought a breach-of-contract suit in state court against the warehouse owner, which was a real estate investment trust ("REIT"). *Id.* The REIT removed the case to federal court based on diversity jurisdiction. *Id.* On

15

appeal, the United States Court of Appeals for the Tenth Circuit looked at the citizenship of the REIT's members for purposes of determining diversity jurisdiction, and the Supreme Court affirmed that choice. *Id.* at 1014-15. The Supreme Court likened the REIT to other unincorporated business associations, like joint-stock companies or partnerships, each of which has as its citizenship the citizenship of its members. *Id.* at 1016. The Court declined to base its reasoning on *Navarro*, because, "[a]s [it] ha[s] reminded litigants before, ... *Navarro* had nothing to do with the citizenship of [a] trust." *Id.* (internal quotation marks omitted and last alteration in original) (citing *Carden*, 494 U.S. at 192-93). It was instead about the trustees' citizenship. The *Navarro* rule – that the jurisdictional citizenship of a trustee filing a lawsuit in his own name is the state where he is domiciled – is compatible with the rule applied to REITs and other business trusts, namely, that the jurisdictional citizenship of an artificial entity suing or being sued in its name includes the citizenship of each of its constituent members. *Id.*

Citing our decision in *Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192 (3d Cir. 2007), the Supreme Court noted the challenge courts have had in deciding how to assign citizenship for jurisdictional purposes when a trust is a party to a suit. *Id.* The Court said:

> confusion regarding the citizenship of a trust is understandable and widely shared. *See Emerald Investors* ... (discussing various approaches among the Circuits). The confusion can be explained, perhaps, by tradition. Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary relationship" between multiple

16

people.  Such a relationship was not a thing that
could be haled into court; legal proceedings
involving a trust were brought by or against the
trustees in their own name.  And when a trustee
files a lawsuit or is sued in her own name, her
citizenship is all that matters for diversity
purposes. *Navarro*, 446 U.S., at 462–466 ... .  For
a traditional trust, therefore, there is no need to
determine its membership, as would be true if the
trust, as an entity, were sued.

*Id.* (some citations omitted).    The Court then went on to
distinguish business trusts from traditional trusts, as follows:

Many States, however, have applied the "trust"
label to a variety of unincorporated entities that
have little in common with this traditional
template.  Maryland, for example, treats a real
estate investment trust as a "separate legal
entity" that itself can sue or be sued.  So long as
such an entity is unincorporated, we apply our
"oft-repeated rule" that it possesses the
citizenship of all its members. *Carden*, 494 U.S.,
at 195, ... .  But neither this rule nor *Navarro*
limits an entity's membership to its trustees just
because the entity happens to call itself a trust.

*Id.* (citation omitted).

While there has been some question about what the
Court meant when it said, "[f]or a traditional trust, therefore,
there is no need to determine its membership, as would be true

if the trust, as an entity, were sued,"[11] one thing seems clear: the Court was declaring that, because a business trust is an artificial legal entity and a traditional trust is not, the citizenship of a traditional trust must be determined differently than that of a business trust.[12] *Id.* We therefore conclude that the citizenship of a traditional trust is based solely on that of its trustee. The United States Courts of Appeals for the Second

---

[11] "For example, does the phrase mean that there is no need to determine entity membership for diversity purposes when a 'traditional trust' is sued as an entity? Or do we read the statement to mean that a trust sued as an entity must prove entity membership because it is a separate legal person from the individual trustees?" *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 749 (4th Cir. 2016).

[12] Even before *Americold Realty*, the law distinguished between traditional and business trusts in general and for purposes of tax treatment, *see* Restatement (Second) of Trusts § 1 cmt. b (1959) ("[A] trust as a device for carrying on business is not within the scope of the Restatement of this Subject. ... The business trust is a special kind of business association and can best be dealt with in connection with other business associations."); *see also Morrissey v. Comm'r*, 296 U.S. 344, 357 (1935) ("In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of a business and sharing its gains."), but not explicitly for jurisdictional purposes. After *Americold Realty*, courts have provided more guidance. *See infra* Section II.C.2 (distinguishing traditional and business trusts).

18

Circuit and the D.C. Circuit have concluded the same. *See Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 722 (2d Cir. 2017) ("We conclude that legal proceedings involving such traditional trusts are effectively brought by or against their trustees and, thus, it is the trustees' citizenship, not that of beneficiaries, that matters for purposes of diversity."); *Wang ex rel. Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 494 (D.C. Cir. 2016) ("[T]he citizenship of a traditional trust depends only on the trustees' citizenship[.]"), *cert. denied*, __ U.S. __, 137 S. Ct. 2266, 198 L.Ed.2d 699 (2017); *see also Momenian v. Davidson*, 878 F.3d 381, 389 (D.C. Cir. 2017) (quoting same language from *Wang ex rel. Wong v. New Mighty U.S. Trust*).

That interpretation of *Americold Realty* is consistent with the larger context of the Court's opinion, which focuses on the distinction between traditional trusts and business trusts, while a contrary reading is not. It would be inconsistent with *Americold Realty* to say, as the Defendants urge here, that a traditional trust cannot be brought into court but nevertheless can sue or be sued as an entity. *Wang*, 843 F.3d at 494.

In sum, following the clarification in *Americold Realty*, the citizenship of a traditional trust is only that of its trustee, while that of a business entity called a trust is that of its constituent owners. *Americold Realty* thus effectively abrogates our conclusion in *Emerald Investors* that traditional and business trusts need not be treated differently when determining citizenship for diversity jurisdiction. *Emerald Investors*, 492 F.3d at 198 n.10. *Emerald Investors* involved a trust suing partnerships to "recover[] on two unpaid promissory notes and foreclosure of ... mortgages securing the notes." *Id.* at 193. To determine diversity jurisdiction, the

19

district court considered the citizenship of the trust's beneficiary, but not that of its trustee. *Id.* at 198. We remanded to the district court with instructions to determine diversity jurisdiction based on the citizenship of both the trustee and beneficiary. *Id.* at 205. In arriving at that conclusion, in light of *Carden* and *Navarro*, we assessed four alternatives for determining the citizenship of a trust – "(a) look to the citizenship of the trustee only; (b) look to the citizenship of the beneficiary only; (c) look to the citizenship of either the trustee or the beneficiary depending on who is in control of the trust in the particular case; and (d) look to the citizenship of both the trustee and the beneficiary." *Id.* at 201. We chose option (d) – look to the citizenship of both the trustee and beneficiary. *Id.* Importantly, we declined to distinguish between traditional and business trusts, saying, "[o]ur research ... has not led us to conclude that the type of trust calls for a difference in treatment when determining a trust's citizenship for diversity of citizenship jurisdictional purposes." *Id.* at 198 n.10.

*Americold Realty*, necessarily changes that conclusion. As already explained, it instructs that there is a difference of jurisdictional significance between traditional trusts – which embody a fiduciary relationship – and business trusts – which, though they bear the "trust" name, are unincorporated business entities. Given the Supreme Court's analysis, we now recognize the abrogation of that part of our holding in *Emerald Investors* that treated the analysis of the jurisdictional citizenship of business trusts the same as that of traditional trusts.

## 2. Distinguishing Between Traditional And Business Trusts In This Case

20

The remaining question is how to distinguish between traditional and business trusts. The primary point of distinction is, again, in light of *Americold Realty*, that a traditional trust exists as a fiduciary relationship and not as a distinct legal entity. 136 S. Ct. at 1016 (citing Restatement (Second) of Trusts § 2). Another general distinction between traditional and business trusts is that a traditional trust facilitates a donative transfer, whereas a business trust implements a bargained-for exchange. *See* S.I. Strong, *Congress and Commercial Trusts: Dealing with Diversity Jurisdiction Post-*Americold, 69 Fla. L. Rev. (forthcoming) (manuscript at 14-15), http://ssrn.com/abstract=2834023 (citing law review articles for that proposition); *see also Wang*, 843 F.3d at 494-95 (concluding trust at issue was a traditional trust because, among other reasons, it was donative trust under D.C. law).

There are thus at least two inquiries a court should undertake when deciding whether, for diversity purposes, a trust is of the "traditional" or "business" variety. First, the court ought to look to the law of the state where the trust was formed to determine whether the trust has the status of a juridical person. *Raymond Loubier*, 858 F.3d at 730-31 (looking to Florida state law); *Wang*, 843 F.3d at 494-95 (looking to D.C. law). Comparing the state law on business trusts and more traditional trust relationships may facilitate a determination of which type is better suited to describe the trust at issue. *Wang*, 843 F.3d at 494-95. At the same time, however, the particular labels affixed by state law are not of themselves determinative. *See Americold Realty*, 136 S. Ct. at 1016 (noting that a trust entity's membership is not limited to only its trustees "just because the entity happens to call itself a trust"); *Navarro*, 446 U.S. at 472 & n.5 (Blackmun, J., dissenting) (arguing that state law is "relevant" but not

21

"dispositive" to threshold questions of federal jurisdiction). Ultimately, our jurisdiction is based on constitutional and federal statutory authority, not state law. *Penn Gen. Cas. Co. v. Pennsylvania ex rel. Schnader*, 294 U.S. 189, 197 (1935).

The second, and closely related, inquiry the court should make focuses on the purpose of the trust – a traditional trust facilitates a donative transfer, *Wang*, 843 F.3d at 495, while a business trust implements a bargained-for exchange, Strong, *supra*, at 14-15. Principles described in the Second Restatement of Trusts, a source on which we have relied to identify whether an express trust has been created, *see In re Penn Cent. Transp. Co.*, 484 F.2d 1300, 1305 (3d Cir. 1973) (citing Restatement (Second) of Trusts § 2 (1959)), can be informative in that inquiry.[13]

Here, the Defendants argue that, even if the trusts at issue were traditional trusts, we should still look to their beneficiaries to determine diversity because of the trusts' positioning within the layers of GBForefront's ownership structure. The Defendants point out that the trusts did not initiate the lawsuit, and rather are relevant only for

---

[13] The Second Restatement of Trusts describes traditional rather than business trusts. Restatement (Second) of Trusts § 1 cmt. b (1959) (explaining the scope of the Second Restatement of Trusts); *see supra* n.12. It defines a "trust" as "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement (Second) of Trusts § 2 (1959).

22

jurisdictional purposes because they are limited partners of a limited partnership that in turn is a limited partner of the partnership that actually initiated the lawsuit. *See supra* note 1 (describing GBForefront's ownership structure). According to the Defendants, *Americold Realty*, *Carden*, and *Navarro* can be distinguished as applying only when the trust or trustee was the party that sued or was sued. Thus, they argue, the trust entities are involved in the lawsuit through the layers of GBForefront's ownership structure, so their beneficiaries are necessarily involved too. We disagree.

The rules for determining citizenship do not change depending on whether a trust is embedded within another business entity. *See Lincoln Benefit Life Co.*, 800 F.3d at 105 n.16 (stating rule to trace citizenship through "however many layers of partners or members there may be" (citation omitted)); *cf. Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 348-49 (3d Cir. 2013) (determining citizenship of plaintiff LLC, whose sole member was a corporation, as the states of incorporation and principal place of business of the corporation). Given the Supreme Court's decision in *Americold Realty*, the jurisdictional citizenship of a traditional trust is only that of its trustee. That rule is definitive.

Unfortunately, the record on appeal is insufficient for us to apply that rule to resolve the Defendants' factual challenge to diversity jurisdiction in this case. In particular, the record is insufficient because GBForefront comprised five trusts but the record only contains the trust instrument for one of them. We must, therefore, remand to the District Court with instructions for it to determine, based on the foregoing guidance, whether

the trusts at issue are traditional or business trusts and thus whether there is diversity jurisdiction.[14]

## III.    CONCLUSION

Accordingly, we will vacate the District Court order dismissing the case for lack of diversity jurisdiction and remand for further proceedings consistent with this opinion.

---

[14] Other arguments that GBForefront raised on appeal are moot in light of our holding.