**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2923
_____

PEACE CHURCH RISK RETENTION GROUP, (A
RECIPROCAL), AS SUBROGEE OF BARCLAY
FRIENDS; CARING COMMUNITIES, (A RECIPROCAL),
AS SUBROGEE OF BARCLAY FRIENDS

v.

JOHNSON CONTROLS FIRE PROTECTION LP, FKA
SimplexGrinnell LP,
                                             Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 5-19-cv-05377
U.S. District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
July 8, 2022

Before: SHWARTZ, KRAUSE, and ROTH, *Circuit Judges*

(Opinion Filed: September 20, 2022)

Catherine G. Bryan
Jeffrey L. O'Hara
Connell Foley
1085 Raymond Boulevard
One Newark Center, 19th Floor
Newark, NJ 07102

Timothy K. Lewis
Schnader Harrison Segal & Lewis
120 Fifth Avenue
Suite 2700
Pittsburgh, PA 15222

Bruce P. Merenstein
Schnader Harrison Segal & Lewis
1600 Market Street
Suite 3600
Philadelphia, PA 19103
        *Attorneys for Johnson Controls Fire Protection LP*

Morgan S. Birch
Thomas B. Fiddler
Justin E. Proper
White & Williams
1650 Market Street
One Liberty Place, Suite 1800
        *Attorneys for Peach Church Risk Retention Group and
        Caring Communities*

2

―――――――――

OPINION OF THE COURT
―――――――――

KRAUSE, *Circuit Judge.*

The parties' initial briefs asked us to decide the availability of particular tort claims under Pennsylvania law. But before any federal court can decide the merits of such a question, it must have the jurisdiction to do so, and supplemental briefing on a jurisdictional issue submitted to this Court convinces us that it may be lacking here. That is because the federal courts' authority to entertain this case is premised on diversity jurisdiction, but we conclude that the citizenship of reciprocal insurance exchanges, such as Plaintiffs-Appellees, turns on the citizenship of their subscribers, who may not be completely diverse from Defendant-Appellant. As additional factfinding is needed on this issue, we will vacate the District Court's denial of the motion to dismiss under Rule 12(b)(6) and remand for that Court to determine the existence of diversity jurisdiction in the first instance.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of a tragic fire at the Barclays Friends assisted living facility in 2017 that caused four residents' deaths. The estates of those residents sued Barclay Friends and Defendant-Appellant Johnson Controls Fire Protection LP ("Johnson Controls") (formerly known as SimplexGrinnell), which maintained and monitored Barclay Friends's fire-suppression system at the time of this terrible incident.

3

After Barclay Friends—and by extension its liability insurers, the Plaintiffs-Appellees Peach Church Risk Retention Group ("Peace Church") and Caring Communities (collectively, the "Liability Insurers")—settled with the estates, the Liability Insurers filed the instant suit against Johnson Controls in federal court, asserting diversity jurisdiction. They alleged that because Johnson Controls's tortious conduct caused the fire—and the fire caused the residents' deaths, eventually leading to Barclay Friends's voluntary settlement of the estates' claims—the Liability Insurers, standing in the shoes of Barclay Friends as its subrogees, are entitled to damages in the amount of the settlement payments they made on Barclay Friends's behalf. The Liability Insurers' complaint asserted claims against Johnson Controls for a variety of torts, including negligence, gross negligence, wanton and willful misconduct, negligent misrepresentation, intentional misrepresentation, fraud, and breach of implied warranty of workmanlike services.

Johnson Controls moved to dismiss under Rule 12(b)(6), arguing that there was no legal basis for the Liability Insurers to recover the settlement payments they independently chose to make to third parties without bringing traditional indemnity or contribution claims. The District Court, reasoning, among other things, that there was no clear prohibition under Pennsylvania subrogation law on insurers "asserting tort-based claims against third party tortfeasors," denied the motion. Given the novelty of the Liability Insurers' theory of liability, however, it granted Johnson Controls's motion to certify the order for interlocutory appeal, and we then granted the ensuing petition to appeal.

4

## II.   JURISDICTION AND STANDARD OF REVIEW

The complaint asserts that the District Court had jurisdiction based on the diversity of the parties under 28 U.S.C. § 1332, and the case culminated in an interlocutory order. Having previously granted Johnson Controls's petition to appeal, we ordinarily would exercise jurisdiction to review that order pursuant to 28 U.S.C. § 1292(b). Here, however, a threshold question has arisen as to the existence of diversity jurisdiction, and despite the fact that the appeal in this case was limited to the merits of the District Court's dismissal, we have a continuing obligation to assess subject matter jurisdiction *sua sponte* at all stages of the proceeding, even when parties do not raise the issue. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 395 (3d Cir. 2004). And while "the absence of complete diversity [would] deprive[] all federal courts of subject matter jurisdiction over this action, a federal court always has jurisdiction to determine its jurisdiction." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (citing *United States v. Ruiz*, 536 U.S. 622, 628 (2002)).

We exercise plenary review over issues of subject matter jurisdiction. *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 345 (3d Cir. 2013).

## III.   DISCUSSION

Federal courts are courts of limited jurisdiction, and we must therefore be certain that there is a basis for our authority to hear each suit before proceeding to the merits. *See Zambelli Fireworks*, 592 F.3d at 418. One such basis, diversity jurisdiction, "as its name indicates, . . . requires that opposing parties be citizens of diverse states." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018).

5

In order to meet the strictures of the diversity statute, complete diversity is required, meaning that at the time the complaint is filed, no party can be a citizen of the same state as any opposing party.[1]  *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 & n.9 (3d Cir. 2015); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 414 n.2 (3d Cir. 1999).

## A.    Citizenship Determinations

For the most part, the rules for determining the citizenship of individuals and the various types of business entities are "well-established."  *GBForefront*, 888 F.3d at 34 (citing *Zambelli Fireworks*, 592 F.3d at 419).  For example, "[a] natural person is deemed to be a citizen of the state where he is domiciled," while "[a] corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Zambelli Fireworks*, 592 F.3d at 419.  For "artificial entities other than corporations," the general rule is that the citizenship of the entity is determined by the citizenship of "all [its] members." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016) (internal quotation omitted) (alteration in the original).

The Supreme Court has applied this rule to many common forms of unincorporated entities, such as unions, joint stock companies, and partnerships.  *See Americold*, 577 U.S. at

---

[1] Section 1332(a) provides, in relevant part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).

381 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 189–90 (1990)); *see also Chapman v. Barney*, 129 U.S. 677, 682 (1889) (joint stock companies); *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 457 (1900) (partnerships); *United Steelworkers of Am. v. R.H. Bouligny, Inc.*, 382 U.S. 145, 146–47 (1965) (unions). As a result, there is no question of how the citizenship of Johnson Controls is to be determined. In *Carden v. Arkoma Associates*, the Supreme Court held that for diversity purposes, the citizenship of a limited partnership is the same as the citizenship(s) of all of its partners, including its limited partners, 494 U.S. at 195–96; *see also GBForefront*, 888 F.3d at 37, so Johnson Controls is a citizen of every state of which its partners are citizens.[2]

There remain some unincorporated associations, however, for which it is not entirely clear who or what counts as a "member." That is because, while the Supreme Court has "never expressly defined the term," it has developed a "principle" of "equat[ing] an association's members with its owners or 'the several persons composing such association,'" *Americold*, 577 U.S. at 381 (quoting *Carden*, 494 U.S. at 196),

---

[2] Its partners, of course, may be either natural persons or artificial entities themselves, and the citizenship rules will need to be applied to them in turn in order to determine all the states of which Johnson Controls is a citizen. *See, e.g.*, *GBForefront*, 888 F.3d at 36 (explaining that "[w]hen a business entity consists of constituent parts that are also business forms, the inquiry into jurisdictional citizenship 'can become quite complicated'" because "'[t]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be'" (quoting *Lincoln*, 800 F.3d at 105 n.16).

7

and it is left to the courts to apply that principle to novel types of unincorporated entities as they arise.

The Liability Insurers fit that category.[3]  Each of them is structured as a reciprocal insurance exchange—also known as a reciprocal exchange or interinsurance exchange—which is, in general, a distinct legal entity that can sue or be sued in its own name, but unlike traditional mutual insurance companies, has no corporate existence.  43 AM. JUR. 2D INSURANCE §§ 72, 77.  It is instead an unincorporated association whose subscribers "exchange contracts and pay premiums . . . for the purpose of insuring themselves and each other."  *Reciprocal Exchange*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see Baer v. United Servs. Auto. Ass'n*, 503 F.2d 393, 395 n.3 (2d Cir. 1974) ("[I]n a reciprocal insurance association the members, by exchanging contracts of insurance, are both the insurers and the insureds."); *James G. Davis Const. Corp. v. Erie Ins. Exch.*, 953 F. Supp. 2d 607, 610–11 (D. Md. 2013) ("[I]n a reciprocal insurance exchange, '[e]ach subscriber is *both* an insurer and an insured.'" (second alteration and emphasis in original) (quoting Michael A. Haskel, *The Legal Relationship Among A Reciprocal Insurer's Subscribers, Advisory Committee and Attorney-in-Fact*, 6 N.Y. CITY L. REV. 35, 36 (2003))).  The subscribers are thus simultaneously both the insureds of and insurers to one another, with the exchanges of insurance between them effected by a common representative (the "attorney-in-fact"),

---

[3] We consider the Liability Insurers' citizenship rather than Barclay Friends's because Barclay Friends subrogated its rights to the insurers.  *See Fallat v. Gouran*, 220 F.2d 325, 326 (3d Cir. 1955); *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80–82 (2d Cir. 2005).

who acts as an agent for each individual subscriber. 43 AM. JUR. 2D INS. § 72. A reciprocal insurance exchange is thus "something more than a partnership and something less than an insurance corporation"; it is, essentially, an aggregation of subscribers who swap liabilities amongst themselves. 3 COUCH ON INS. § 39:48 (3d ed.); *see also, e.g.*, *True v. Robles*, 571 F.3d 412, 421–23 & n.2 (5th Cir. 2009); *Lewis v. United Servs. Auto. Ass'n*, 45 F.3d 433 (8th Cir. 1994) (unpublished table decision); *Baer*, 503 F.2d at 394–96 & n.3; *Arbuthnot v. State Auto. Ins. Ass'n*, 264 F.2d 260, 261–62 (10th Cir. 1959).

The question, then, is whether these subscribers are merely customers of the exchange, or, alternatively, "members" of the exchange whose citizenship then determines the citizenship of the exchange itself. We have not previously had cause to consider this question. We hold here that subscribers to reciprocal *insurance* exchanges must be treated as members for diversity purposes.

We reach that conclusion for this form of business entity by looking to the laws of the states in which the entity is organized. In *Americold*, the Supreme Court instructed us to do just that when considering a form of unincorporated artificial entity for the first time in the context of diversity jurisdiction. *See* 577 U.S. at 382 (considering a "real estate investment trust" organized under Maryland law and noting that "Maryland law provides an answer" as to who its members are). Here, according to the complaint, Peace Church is organized under the laws of Vermont, and Caring Communities is organized under the laws of the District of Columbia.

Both Vermont and the District of Columbia allow for the creation of reciprocal insurance exchanges that follow the general organizational principles outlined above;[4] and their laws and regulations confirm that for this type of entity, its "members"—that is, its "owners," or "the several persons composing such [an] association," *Americold*, 577 U.S. at 381 (internal quotation omitted)—are its subscribers. It is they (along with their agent, the attorney-in-fact) who comprise the reciprocal insurance exchange and are considered a single entity as to all of the exchange's operations, D.C. Mun. Regs. tit. 26, § 4005.3; Vt. Stat. Ann. tit. 8, § 4835(b); who have the authority to set the rules pursuant to which its governance committee is selected, D.C. Mun. Regs. tit. 26, § 4017; Vt. Stat. Ann. tit. 8, § 4847; who are ultimately responsible for making up the deficiency when the reciprocal insurance exchange cannot discharge its liabilities, D.C. Mun. Regs. tit. 26, § 4026; Vt. Stat. Ann. tit. 8, § 4856; and who may receive

---

[4] *See* D.C. Mun. Regs. tit. 26, § 4099 (defining "[r]eciprocal insurers" or "reciprocals" as "an unincorporated insurance company, under a common name, in which subscribers exchange insurance policies through an Attorney in Fact, having the authority to obligate each subscriber both as insured and insurer, for the purpose of transferring and distributing insurance risks among its subscribers"); *id.* at § 4006.1 (authorizing such organizations); Vt. Stat. Ann. tit. 8 § 4831(2)–(3) (defining "[r]eciprocal" insurance as "that resulting from an interchange among persons, known as subscribers, of reciprocal agreements of indemnity, the interchange being effectuated through an attorney-in-fact common to all such persons" and "[s]ubscribers" as "persons who enter into reciprocal insurance agreements under this chapter"); *id.* at § 4836(a) (authorizing such organizations).

the remaining assets of a liquidated reciprocal insurance exchange after it has, among other things, discharged its liabilities, D.C. Mun. Regs. tit. 26, § 4024; Vt. Stat. Ann. tit. 8, § 4854.

Because the members of a reciprocal insurance exchange are its subscribers, we look to the citizenships of those subscribers to determine the citizenship of the exchange itself. *See Carden*, 494 U.S. at 195–96. And that brings us to the exchanges here, the Liability Insurers, and the question of whether diversity is present in this case.

## B. Diversity of Citizenship in This Case

According to the parties' supplemental submissions on this issue, the Liability Insurers have subscribers who are located in a multitude of states, including, as relevant here, Delaware and Wisconsin. On the other side of the "v.", the opposing party, Johnson Controls, a limited partnership, identifies its members as other LLCs and LPs that make it a citizen of Delaware and Wisconsin.[5] In short, diversity jurisdiction appears to be lacking.

That said, we are not prepared to rest on appearances when additional factfinding is clearly required. For one thing, although the Liability Insurers correctly note that diversity of citizenship is determined at the time the complaint is filed, it is

---

[5] Johnson Controls lists its members as Simplex Time Recorder LLC, Tyco Fire Protection LLC, STR Grinnell GP Holding, LLC, and Master Protection LP, and the members of those entities, in turn, are considered in tracing Johnson Controls's citizenship to these two states.

11

nevertheless not sufficiently clear from the affidavits submitted with their supplemental briefing whether the subscribers they "ha[ve]" were citizens of the enumerated states (and subscribers) at the time they filed their complaint; Johnson Controls' submission similarly fails to specify whether it reflects its make-up as of the relevant time.[6] *Cf. Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011) (noting that citizenship of the parties must be determined "based on the relevant facts at the time the complaint was filed"). The subscribers' citizenship, moreover, will depend on whether they are natural persons or artificial entities and, potentially, on indicia beyond mere physical presence in the state to establish citizenship. *See, e.g.*, *Frett-Smith v. Vanterpool*, 511 F.3d 396, 400–01 (3d Cir. 2008); *Johnson*, 724 F.3d at 347–49.

In the normal course, because the "[h]istorical or chronological data which underl[ie] a court's determination of diversity jurisdiction are factual in nature," our role is to review

---

[6] Johnson Controls's letter also indicates that its citizenship traces back to an entity "handled as a corporation." It is not clear what Johnson Controls means by this, so the District Court should inquire into this representation as well, applying the principles set forth above. *See Americold*, 577 U.S. at 382–83 (looking to state law but noting that "so long as . . . an entity is unincorporated, we apply our oft-repeated rule that it possesses the citizenship of all of its members" (quotation marks omitted)); *see also Fairfield Castings, LLC v. Hofmeister*, 112 F. Supp. 3d 850, 853 (S.D. Iowa 2015) (noting an entity's "elective decision to be treated as a corporation for tax purposes does not somehow transform its LLC status for purposes of evaluating diversity jurisdiction").

the district court's findings on these points for clear error. *Krasnov v. Dinan*, 465 F.2d 1298, 1299–1300 (3d Cir. 1972). In this case, however, there are no factual findings for us to review because the District Court did not have the opportunity to evaluate jurisdiction in light of the supplemental submissions and our holding today regarding the treatment of reciprocal insurance exchanges. We will therefore remand for the Liability Insurers to provide more specificity about their citizenship and for the District Court, in the first instance, to make findings and conclusions concerning its jurisdiction. *See, e.g.*, *GBForefront*, 888 F.3d at 36, 41.

\* \* \*

For the foregoing reasons, we will vacate the District Court's denial of the motion to dismiss under Rule 12(b)(6) and remand for proceedings consistent with this opinion.