**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-1846

———————

SHANTHI HEJAMADI; RICARDO VARELA,

Appellants

v.

MIDLAND FUNDING LLC; MIDLAND CREDIT MANAGEMENT, INC.;
JOHN DOES 1 to 10

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-13203)
District Judge: Honorable Katharine S. Hayden

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 28, 2023

Before: MATEY, FREEMAN, and FUENTES, *Circuit Judges*

(Opinion filed August 31, 2023)

———————

OPINION[*]

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FREEMAN, *Circuit Judge*.

Appellants Shanthi Hejamadi and Ricardo Varela appeal from the District Court's order granting the motion to compel arbitration filed by Appellees Midland Funding LLC and Midland Credit Management, Inc., and dismissing Appellants' amended complaint. Because of a change in governing authority that post-dates the District Court's order, we will remand for further proceedings.

## I.

Appellants each opened Home Depot credit card accounts with Citibank, N.A., which were subject to the same written credit card agreement. The agreement was amended in December 2016 upon written notice to Appellants. The agreement contains an arbitration provision that permits Citibank or the cardholder to elect mandatory arbitration of "any claim, dispute or controversy between [the cardholder] and [Citibank] arising out of or related to [the] account, a previous related account or our relationship." App. 246. The arbitration provision also contains both an assignment clause and a survival clause. The assignment clause provides that Citibank "may assign any or all of [its] rights and obligations under th[e] Agreement to a third party," and the survival clause states that the "arbitration provision shall survive changes in th[e] Agreement and termination of the account or the relationship between [the cardholder] and [Citibank], including . . . any sale of [the cardholder's] account, or amounts owed on [the] account, to another person or entity." App. 248.

On September 29, 2017, Midland Funding ("Midland") purchased from Citibank a group of credit card accounts, including Appellants' accounts. The transaction was

effectuated by a "Purchase and Sale Agreement," among other documents, which set forth Citibank's agreement "to sell, assign and transfer to" Midland, and Midland's agreement "to purchase from [Citibank] on the Closing Date all right, title and interest of [Citibank] in and to the Accounts," as well as Midland's agreement to "assume, with respect to each Account, all of [Citibank's] rights, responsibilities, and obligations that arise as a result of [its] purchase of the Accounts." App. 5–6 (quoting Purchase and Sale Agreement).

In attempting to collect money allegedly owed on the accounts, Midland sent collection letters to Appellants and later filed a debt-collection action against Hejamadi in New Jersey state court. Hejamadi responded by filing a class action counterclaim against Midland, asserting that its collection letters violated the Fair Debt Collection Practices Act ("FDCPA"). Midland voluntarily dismissed its debt-collection action, and the court realigned the parties to reflect that Midland was now the defendant with respect to the only claim that remained in the case. Midland then removed the case to the United States District Court for the District of New Jersey and moved to compel arbitration.

While in federal court, Hejamadi filed an amended class action complaint that added Varela as a named plaintiff and added Midland's affiliate, Midland Credit Management, Inc. ("MCM"), as a defendant. After limited discovery on arbitrability, the District Court granted Midland's and MCM's renewed motion to dismiss the amended complaint and compel arbitration. Hejamadi and Varela timely appealed.

**II.**[1]

"We exercise plenary review over issues of subject matter jurisdiction." *Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 869 (3d Cir. 2022). We also exercise plenary review over "'questions of law concerning the applicability and scope of arbitration agreements' and whether a party 'through its litigation conduct, waived its right to compel arbitration.'" *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 450–51 (3d Cir. 2011) (quoting *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 200 (3d Cir. 2010)). When a district court makes factual findings related to those arbitration determinations, we review its findings for clear error. *Id.* at 451.

**III.**

A.

Appellants argue that Midland's removal of this matter to federal court was improper and thus the District Court lacked subject matter jurisdiction. But the District Court had subject matter jurisdiction over the FDCPA claim, and its jurisdiction was unaffected by any purported defect in the removal process. And Appellants forwent their opportunity to challenge the removal on non-jurisdictional grounds.

In *Korea Exchange Bank v. Trackwise Sales Corp.*, we held that the removal statute does not impose "independent jurisdictional restrictions on the federal courts." 66

---

[1] As discussed below, the District Court had jurisdiction under 28 U.S.C. § 1331. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(3). *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) ("[W]here . . . the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable.").

F.3d 46, 50 (3d Cir. 1995). We remarked on the "clear distinction between the removal 'process' and restrictions on the subject matter jurisdiction of the federal court over the case." *Id.* at 49. We also noted that the Supreme Court "analogized the issue of which party brought the case to federal court to the type of waivable defect such as 'any irregularity in docketing the case or in the order of pleadings,' and distinguished that type of defect from one affecting the subject matter jurisdiction of the court, which was not waivable." *Id.* (quoting *Mackay v. Uinta Dev. Co.*, 229 U.S. 173, 176–77 (1913)).

So we must analyze the jurisdictional question separately from the removal question. Under 28 U.S.C. § 1331, the District Court had subject matter jurisdiction over the only claim in the case at the time of removal: Hejamadi's FDCPA claim against Midland. Even if Midland's removal of this matter ran afoul of 28 U.S.C. § 1441(a) because of Midland's previous denomination as a plaintiff (a question we need not and do not decide here), such a "defect in removal procedure" had no effect on the District Court's subject matter jurisdiction over the case. *Korea Exch. Bank*, 66 F.3d at 50.

We need not address the propriety of the removal procedure because Appellants waived that challenge. Under 28 U.S.C. § 1447(c), a post-removal motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." Appellants never filed a motion to remand; they instead proceeded to litigate this matter in the District Court for almost four years—never complaining about the removal procedure until the District Court entered

5

the arbitration order now on appeal.  Appellants' failure to comply with the 30-day time limit was a waiver.  *Korea Exch. Bank*, 66 F.3d at 50–51.[2]

B.

That brings us to a separate waiver question: Appellants assert that Midland and MCM waived their right to compel arbitration.  In a well-reasoned opinion, the District Court applied this Court's then-existing precedent and concluded that Midland and MCM did not waive their arbitration right.  But the precedent has since changed.

In *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), the Supreme Court rejected the prejudice-focused arbitration waiver inquiry established by this Court and other Courts of Appeals.  *See White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338–39 (3d Cir. 2023).  Under *Morgan*, courts must apply the general waiver inquiry: they must ask whether a party has intentionally relinquished or abandoned a known right.  *Id.* at 339 (citing *Morgan*, 142 S. Ct. at 1713).  We must focus on the actions of the party who held the right—not on prejudice to the opposing party—and consider the circumstances and context of each case.  *Id.*  Because the District Court has not had an opportunity to address arbitration waiver using the inquiry required by *Morgan*, we will remand so the District Court can do so in the first instance.

---

[2]    Indeed, a district court has no authority to order a remand based on a perceived procedural defect in the removal process in the absence of a timely motion brought by a party.  *In re FMC Corp. Packaging Sys. Div.*, 208 F.3d 445, 451 (3d Cir. 2000).

6

C.

Apart from any waiver questions, Appellants argue that MCM cannot seek to compel arbitration because MCM did not sign the card agreement that contains the arbitration provisions. But Appellants have not appealed the District Court's conclusion that Citibank assigned all of its rights under the card agreement—including the right to arbitrate—to Midland. So Midland is a party to the agreement, and absent any waiver of its arbitration rights (*see* Section III.B), Midland can compel arbitration of claims made "against anyone connected with" it, App. 247, including its affiliate MCM.[3] Even if MCM could not independently enforce the arbitration provisions, that would not affect the outcome of Midland's motion to compel arbitration of Appellants' claims against Midland and MCM.

* * * * *

For the foregoing reasons, we will remand so the District Court can consider whether there has been any arbitration waiver under the inquiry the Supreme Court recently announced.

---

[3] Appellants' reliance on *White v. Sunoco, Inc.*, 870 F.3d 257 (3d Cir. 2017) is misplaced. There, the only defendant in the lawsuit was not a party to the arbitration agreement, nor was it sufficiently "connected with" a party to the arbitration agreement to bring claims against it within the scope of the arbitration agreement. *Id.* at 267–68. Unlike here, no party to the *Sunoco* lawsuit could compel arbitration.

7