**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 2, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CELESTE C. GRYNBERG, individually
and as Trustee on behalf of the Rachel
Susan Trust, the Stephen Mark Trust, and
the Miriam Zela Trust; JACK J.
GRYNBERG,

      Petitioners - Appellants,

v.

KINDER MORGAN ENERGY
PARTNERS, L.P., a Delaware Master
Limited Partnership; KINDER MORGAN
CO2 COMPANY, L.P., a Texas Limited
Partnership,

      Respondents - Appellees.

No. 14-1465

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 1:14-CV-01832-WJM)**
_____

Daniel L. Abrams, Law Office of Daniel L. Abrams, PLLC, New York, New York
(Richard P. Barkley, The Barkley Law Firm, Englewood, Colorado, with him on the
briefs), appearing for Appellants.

Stacy M. Neal (Guy S. Lipe, Mark C. Rodriguez, and James L. Leader, Jr., with her on
the brief),Vinson & Elkins, Houston, Texas, appearing for Appellee.
_____

Before **BRISCOE**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.

_____

Celeste C. Grynberg—individually and as trustee on behalf of the Rachel Susan Trust, Stephen Mark Trust, and Miriam Zela Trust—and Jack J. Grynberg petitioned the federal district court to vacate an arbitration award that had been entered against them and in favor of Kinder Morgan Energy Partners, L.P. ("KMEP") and Kinder Morgan CO2 Company, L.P. ("KMCO2," and together with KMEP, "Kinder Morgan entities").

The Grynbergs invoked the court's diversity jurisdiction. When they filed the action, the Grynbergs were citizens of Colorado, KMEP was a Delaware master limited partnership ("MLP"), and KMCO2 was a Texas limited partnership with one partner, KMEP.[1] The district court dismissed the action for lack of jurisdiction. It concluded that under *Carden v. Arkoma Associates*, 494 U.S. 185, 195 (1990), KMEP's citizenship was the citizenship of all its unitholders, and because KMEP had at least one Colorado unitholder, its citizenship was not completely diverse from the Grynbergs'.

The Grynbergs appeal, arguing the district court improperly applied *Carden*. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. **BACKGROUND**

### A. *Overview of MLPs*

This case addresses diversity jurisdiction for MLPs. MLPs are limited partnerships or limited liability companies whose ownership interests, called "common

---

[1] Because KMEP was the sole partner of KMCO2, KMCO2's citizenship included KMEP's citizenship.

units," are publicly traded. John Goodgame, *New Developments in Master Limited Partnership Governance*, 68 Bus. L. 81, 82 (2012); *Wood v. Walton*, No. WDQ-09-3398, 2010 WL 458574, at *1 n.3 (D. Md. Feb. 2, 2010) (unpublished).[2] MLPs are similar to limited partnerships in that they have general partners who manage the partnership's affairs and limited partners (called "unitholders") who provide capital. *Trafigura AG v. Enter. Prods. Operating LLC*, 995 F. Supp. 2d 641, 643 n.1 (S.D. Tex. 2014). MLPs are classified as partnerships for federal taxation purposes, which allows them to benefit from "pass-through" taxation. *Id.* They are similar to corporations, however, in that MLPs are publicly traded. *See id.* Although MLPs are organized under state law, federal law permits federal pass-through taxation for MLPs engaged predominately in the "exploration, development, mining, or production, processing, refining, [or] transportation . . . of any mineral or natural resource." 26 U.S.C. § 7704(d)(1)(E).

## B. *Procedural Background*

On July 1, 2014, the Grynbergs petitioned the United States District Court for the District of Colorado to vacate an arbitration award that had been entered against them and in favor of the Kinder Morgan entities. The petition alleged the district court had diversity jurisdiction because the amount in controversy exceeded $75,000 and the parties were completely diverse. *See* 28 U.S.C. § 1332. The petition alleged that the Grynbergs

---

[2] Although unpublished, out-of-circuit, district court opinions lack precedential value, we find the reasoning of such decisions cited here to be instructive under the circumstances of this case. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

were citizens of Colorado, that KMEP was a Delaware limited partnership[3] with its principal place of business in Texas, and that KMCO2 was a Texas limited partnership with its principal place of business in Texas.

On July 2, 2014, the district court issued an Order to Show Cause, which said the Grynbergs' petition did not adequately allege diversity jurisdiction because it did not properly identify the citizenship of the two limited partnerships, KMEP and KMCO2, as of the filing date. The court explained that under *Carden*, 494 U.S. at 195, the citizenship of limited partnerships was the citizenship of all its unitholders. The court ordered the Grynbergs to identify all of KMEP's unitholders and KMCO2's members.

The Grynbergs responded, explaining that KMEP was a publicly traded Delaware MLP and that KMCO2 was a Texas limited partnership wholly owned by KMEP. The Kinder Morgan entities responded and explained that KMEP had unitholders who were citizens of Colorado. The Grynbergs argued that, because KMEP was an MLP and not a limited partnership, *Carden* was inapplicable. Instead, the Grynbergs argued, KMEP's citizenship was its principal place of business and state of formation.

The district court concluded *Carden* controlled and the Grynbergs had failed to establish complete diversity. It therefore dismissed the action without prejudice for lack of jurisdiction.

---

[3] The petition did not allege that KMEP was an MLP. As explained below, the Grynbergs first identified KMEP as an MLP in their response to the district court's order to show cause why it had jurisdiction.

## II.  DISCUSSION

The Grynbergs appeal the district court's decision concluding it lacked diversity jurisdiction.  Deciding an issue of first impression, we hold the citizenship of an MLP consists of its unitholders' citizenship and therefore affirm.

### A.  *Standard of Review*

"We review the district court's order dismissing the case for lack of subject matter jurisdiction de novo."  *Lindstrom v. United States*, 510 F.3d 1191, 1193 (10th Cir. 2007).

### B.  *Diversity Jurisdiction*

The Constitution states, "The judicial Power shall extend to . . . Controversies . . . between Citizens of different States."  U.S. Const. art. III, § 2, cl. 1.  Because "[t]he judicial Power of the United States, shall be vested in . . . such inferior Courts as the Congress may from time to time ordain and establish," *id.* art. III, § 1, Congress determines the jurisdiction of the federal district courts.  *Sheldon v. Sill*, 49 U.S. (8 How.) 441 (1850).  "Congress first authorized the federal courts to exercise diversity jurisdiction in the Judiciary Act of 1789 . . . ."  *Carden*, 494 U.S. at 187.  Under the current diversity statute, 28 U.S.C. § 1332, district courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."

Diversity jurisdiction requires complete diversity—no plaintiff may be a citizen of the same state as any defendant.  *See, e.g.*, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806); *Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs.*, 651 F.3d 1219, 1223 (10th Cir. 2011).  "[F]or purposes of determining the existence of diversity jurisdiction, the

citizenship of the parties is to be determined with reference to the facts as they existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569-70 (2004).

## C. Analysis

Three reasons support our conclusion that an MLP's citizenship consists of its unitholders' citizenship. First, the long-standing rule guiding the jurisdictional citizenship of unincorporated entities, most recently stated in *Carden*, applies to MLPs. Second, the narrow exception to this rule does not apply. Third, the Grynbergs' policy arguments are appropriately addressed to Congress, not the courts.

### 1. Unincorporated Associations, the *Chapman* Rule, and Diversity Jurisdiction

In general, for jurisdictional citizenship, there are two types of business organizations: corporations and unincorporated associations. For diversity, a corporation is a citizen of its state of incorporation and the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 85, 88 (2010) (citing *Louisville, Cincinnati, & Charleston R.R. Co. v. Letson*, 43 U.S. (2 How.) 497, 558 (1844)). The Supreme Court has "firmly resisted extending that treatment to other entities." *Carden*, 494 U.S. at 189.

Instead, beginning with *Chapman v. Barney*, 129 U.S. 677 (1889), the Supreme Court has held an unincorporated entity's citizenship is typically determined by its members' citizenship (the "*Chapman* rule"). *Carden*, 494 U.S. at 189, 195-96. The Court has characterized the *Chapman* rule as a "doctrinal wall," *United Steelworkers of Am., AFL-CIO v. R.H. Bouligny, Inc.*, 382 U.S. 145, 151 (1965), and has applied it to

joint stock companies, *Chapman*, 129 U.S. at 681-82, limited partnership associations, *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 450, 454 (1900), labor unions, *Bouligny*, 382 U.S. at 147, and limited partnerships, *Carden*, 494 U.S. at 195-96. The Tenth Circuit has further applied the rule to trusts, *ConAgra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175, 1182 (10th Cir. 2015), *cert. granted*, 83 U.S.L.W. 3880 (U.S. Oct. 1, 2015) (No. 14-1382), and limited liability companies, *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015). The district court in this case, relying on *Carden*, applied the *Chapman* rule to MLPs to recognize that MLPs are unincorporated and hold that their citizenship for diversity purposes is determined by the citizenship of their unitholders.

The Grynbergs argue the district court misapplied the *Chapman* rule because *Carden* only applied the rule to limited partnerships, and any reference in that decision to other non-corporate business entities was merely dicta. We disagree. *Carden* was the result of case authority spanning a century of Supreme Court decisions uniformly applying the *Chapman* rule and holding that various forms of unincorporated associations are citizens of their members' states of citizenship. *See, e.g.*, *Chapman*, 129 U.S. at 681-82; *Great S. Fire Proof Hotel*, 177 U.S. at 450, 454; *Bouligny*, 382 U.S. at 147; *Carden*, 494 U.S. at 195-96. The rule applies to MLPs because they are unincorporated associations (1) formed under state law as limited partnerships or limited liability companies and (2) classified as partnerships for federal income tax purposes. *See* 26 U.S.C. § 7704(a); *Hite Hedge LP v. El Paso Corp.*, No. 7117VCG, 2012 WL 4788658, at

*1 (Del. Ch. Oct. 9, 2012) (unpublished).[4]  MLPs are not corporations.  We next address

the Grynbergs' argument that MLPs are akin to corporations and should be treated as an

exception to *Chapman* for diversity jurisdiction.

2.  **MLPs Do Not Qualify for an Exception Similar to *Russell***

The Supreme Court recognized one exception to the *Chapman* rule in *Puerto Rico*

*v. Russell & Co.*, 288 U.S. 476, 481-82 (1933).  The Court determined a *sociedad en*

*comandita*—an entity created under Puerto Rico law—was a citizen of Puerto Rico for

diversity analysis.  The Court explained, "[T]he sociedad is a juridical person . . . [whose]

personality is so complete in contemplation of the law of Puerto Rico that we see no

adequate reason for holding that the sociedad has a different status for purposes of federal

jurisdiction than a corporation organized under that law."  *Russell*, 288 U.S. at 481.  For

example, the *sociedad en comandita* is created by filing articles of association as public

records, the articles may allow the entity to continue to exist despite the death or

---

[4] At least eight district courts have addressed this issue.  All have held that the
citizenship of MLPs is the citizenship of all their general and limited partners.  These
courts have concluded either that an MLP is not distinct from a limited partnership, *see,
e.g.*, *LL & E Royalty Tr. ex rel. Parsons v. Quantum Res. Mgmt., LLC*, No. 14-CV-13833,
2015 WL 4274987, at *5 (E.D. Mich. July 14, 2015) (unpublished); *Great Lakes Gas
Transmission, LP v. Essar Steel Minn., LLC*, No. 09-cv-3037, --- F. Supp. 3d ---, 2015
WL 2070558, at *5 (D. Minn. May 4, 2015); *Stevens Eng'rs & Constructors, Inc. v.
MarkWest Liberty Midstream & Res. LLC*, No. 14-cv-00054-RBJ, 2014 WL 2922631, at
*2 (D. Colo. June 27, 2014) (unpublished); *Gonyer v. Enbridge Energy, Ltd. P'ship*, No.
1:13-CV-796, 2014 WL 1255915, at *1-2 (W.D. Mich. Mar. 26, 2014) (unpublished);
*Ada Cty. Highway Dist. v. Nw. Pipeline GP*, No. 1:12-cv-00184-BLW, 2012 WL
4737869, at *1 (D. Idaho Oct. 3, 2012) (unpublished); *Vosburg v. Williams Field Servs.
Co.*, No 3:11- cv-1624, 2011 WL 3881277, at *2 (M.D. Pa. Sept. 2, 2011) (unpublished);
*Wood*, 2010 WL 458574, at *1-2, or that the *Chapman* rule applies to all unincorporated
entities, *Trafigura AG*, 995 F. Supp. 2d. at 646.

withdrawal of members, management and legally binding decision making power may be vested solely in designated managers, and the members are not typically liable for the *sociedad*'s acts and debts. *Id.* at 481. The Grynbergs argue a similar exception is warranted here because MLPs share many corporate characteristics. We disagree for two reasons.

First, in cases since *Russell*, the Supreme Court has declined to extend the exception to any other form of entity and has said it likely applies only to the *sociedad en comandita*. *Carden*, 494 U.S. at 190; *Bouligny*, 382 U.S. at 151. In *Bouligny*, the Court explained that *Russell* presented a distinctive problem of "fitting an exotic creation of the civil law . . . into a federal scheme that knew it not." 382 U.S. at 151. In *Carden*, the Court said that after the *Bouligny* Court declined to extend the exception to labor unions, "[t]here could be no doubt . . . that at least common-law entities (and likely all entities beyond the Puerto Rican *sociedad en comandita*) would be treated for purposes of the diversity statute" as partnerships, whose citizenship is determined according to each member's citizenship. 494 U.S. at 190. And in *Russell* itself, the Court said, "The tradition of the common law is to treat as legal persons only incorporated groups and to assimilate all others to partnerships." 288 U.S. at 480.

Moreover, the *Carden* Court noted that although *Russell* might be read to "reflect the Supreme Court's willingness to look beyond the incorporated/unincorporated dichotomy and to study the [entity's] internal organization, state law requirements, management structure, and capacity or lack thereof to act and/or sue, to determine

diversity of citizenship," the Court had specifically rejected that approach in decisions since *Russell*. 494 U.S. at 190 (alteration omitted) (citing *Bouligny*, 382 U.S. at 151).

Second, even if we consider the MLP's characteristics, they do not support treating an MLP like a corporation for diversity jurisdiction. MLPs and corporations are publicly traded, centrally managed, and have freely transferable interests. But the similarities end there. MLPs are formed as unincorporated entities under state law, and *Carden* reaffirmed the dichotomy between corporations and unincorporated entities.

The Grynbergs do not attempt to compare the management structures of an MLP to those of a *sociedad en comandita* or a corporation, perhaps because MLP governance differs from corporate governance. *See* John Goodgame, *Master Limited Partnership Governance*, 60 Bus. L. 471, 485 (2005). For example, because MLPs are creatures of state limited partnership law, the partnership agreement can modify the fiduciary duties owed by the MLP's partners. *Id.* at 485-87. But corporate law disallows modifying or restricting the fiduciary duties owed by the corporate board of directors. *Id.* at 486.

3. **The Grynbergs' Policy Arguments Should Be Addressed to Congress, Not the Courts**

The Grynbergs urge us not to apply *Carden* to MLPs because doing so would preclude diversity jurisdiction over MLPs.[5] The *Carden* Court acknowledged the law in

---

[5] The Grynbergs argue applying the *Chapman* rule to MLPs "protect[s] 130 very large natural resources companies from ever having to answer in federal court for any wrongdoing, [which] raises grave concerns, which arguably rise to the level of constitutional concerns, about the denial of access to the courts, equal protection, and due process." Aplt. Reply Br. at 18-19. To the extent the Grynbergs raise any constitutional

Continued . . .

this area "can validly be characterized as technical, precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization."  494 U.S. at 196.  Nevertheless, despite practical similarities between corporations and certain types of unincorporated entities, the Court said it was up to Congress, not the courts, to make "further adjustments." *Id.*  Whether MLPs should be "assimilated to the status of corporations for diversity purposes, how such citizenship is to be determined, and what if any related rules ought to apply, are decisions which we believe suited to the legislative and not the judicial branch." *Bouligny*, 382 U.S. at 153.

## III.  **CONCLUSION**

The Grynbergs of Colorado concede diversity jurisdiction is lacking in this case if we determine the *Chapman* rule applies.  It does.  They acknowledge that when they filed this action, at least one KMEP unitholder was a Colorado citizen.  Accordingly, the district court properly dismissed this case for lack of jurisdiction.  We affirm.[6]

---

arguments for the first time in their reply brief, we will not consider them.  *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

[6] The Kinder Morgan entities move to seal portions of the record containing the Grynbergs' petition to vacate the arbitration award and certain exhibits to the petition, including the arbitration award, the settlement agreement at issue in the arbitration proceeding, and the full transcript of the arbitration proceeding.  The Clerk of the Court ordered the Kinder Morgan entities to show cause to justify their sealing request.

We have reviewed the Kinder Morgan entities' response and these materials.  We find the Kinder Morgan entities have established good cause for protecting those pages identified in their response as containing confidential and proprietary information and grant their motion as to those documents.