In the

# United States Court of Appeals
### For the Seventh Circuit

———————

Nos. 14-3671 & 15-1153

RTP LLC and RSCD OPPORTUNITY FUND I, LLC (formerly known as Inheritance Capital Group, LLC),

*Plaintiffs-Appellants,*

*v.*

ORIX REAL ESTATE CAPITAL, INC.,

*Defendant-Appellee.*

———————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 350 — **Charles P. Kocoras**, *Judge.*

———————

ARGUED SEPTEMBER 29, 2015 — DECIDED JULY 1, 2016

———————

Before WOOD, *Chief Judge*, and EASTERBROOK and RIPPLE, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. ORIX Real Estate Capital made a loan of about $41 million to RTP, enabling it to buy a commercial building in North Carolina. The loan is nonrecourse, but both RTP and Inheritance Capital Group signed conditional guarantees that take effect if the borrower com-

mits a default. (Inheritance has a new name, but we use the original, which appears throughout the litigation and the underlying documents.) The loan papers specify in detail what defaults activate the guarantees.

When the real estate market turned down, the building's sole tenant decided not to renew its lease. RTP did not find a new tenant willing to pay as much. Contending that several events of default had occurred, ORIX accelerated the loan and demanded that RTP and Inheritance make good the outstanding debt. They replied with this suit, which seeks a declaration that they do not owe ORIX anything beyond what can be paid out of the building's assets. Ruling in ORIX's favor, the district court ordered RTP and Inheritance to pay about $30 million. 2014 U.S. Dist. LEXIS 124654 (N.D. Ill. Sept. 8, 2014). RTP, a special-purpose vehicle formed for this transaction, does not have any assets beyond the building. But Inheritance does. It is a subsidiary of Detroit's retirement plans (both general civil-service employees and the police and fire departments), which contain billions of dollars.

This suit began in a state court of Illinois. ORIX removed it under the diversity jurisdiction of 28 U.S.C. §1332(a)(1). See 28 U.S.C. §1441(a). ORIX, a corporation, has two citizenships: Delaware (where it is incorporated) and Texas (where it has its principal place of business). 28 U.S.C. §1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Both RTP and Inheritance are limited liability companies, which have the citizenships of their members. See *Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir. 1998); see also *Carden v. Arkoma Associates*, 494 U.S. 185 (1990). Inheritance has two members: the General Retirement System of the City of Detroit, and the Police and Fire Retirement System of the City of Detroit. RTP has mul-

tiple members, all of them undoubtedly citizens of Michigan or New York except for ICG Ellis Road, LLC, which has the retirement funds as members. So whether this suit was removable depends on the citizenships of these two funds.

Both retirement funds are organized as trusts under Michigan law but can sue and be sued in their own names. ORIX relies on *May Department Stores Co. v. Federal Insurance Co.*, 305 F.3d 597, 599 (7th Cir. 2002), and *Hicklin Engineering, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006), both of which understood *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), to stand for the proposition that the citizenship of every trust is the citizenship of its trustees. ORIX represented that all members of the funds' boards of trustees are citizens of Michigan. RTP and Inheritance did not dispute this assertion (even though the record does not contain information about the citizenship of Edsel Jenkins, who was among the trustees on the date the suit was removed). The district judge decided the merits of the controversy without discussing subject-matter jurisdiction.

After the case was argued in this court, we deferred its resolution pending the Supreme Court's decision in *Americold Realty Trust v. ConAgra Foods, Inc.*, 136 S. Ct. 1012 (2016), which posed the question whether *Navarro* establishes a rule applicable to all kinds of trusts. After *Americold* was released, we asked the parties for their views about its effect on this case. With those views in hand, we are ready to decide this appeal.

*Americold* holds that *Navarro* does not establish a special rule for trusts—indeed is not about trusts at all. The Justices explained that *Navarro* follows the normal rule that the citizenship of the litigant controls. A trust often is a fiduciary

relation between two people, the trustee and the beneficiary. When the trustee sues (or is sued), the trustee's citizenship matters. And when the beneficiary sues or is sued, or a trust litigates in its own name, again the citizenship of the party controls.

So what is a trust's citizenship? *Americold* has a clear answer: "While humans and corporations can assert their own citizenship, other entities take the citizenship of their members." 136 S. Ct. at 1014. The Court added that "*Navarro* reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person. This rule coexists with our discussion above that when an artificial entity is sued in *its* name, it takes the citizenship of each of its members." *Id*. at 1016 (emphasis in original; citation omitted). The trusts themselves, not the trustees, are the members of the two LLCs. Detroit's two pension funds contract (and litigate) in their own names. These trusts therefore have the citizenships of their own members. The jurisdictional views expressed in *Hicklin* and *May Department Stores* (and the many similar decisions in this circuit and elsewhere) did not survive *Americold*.

RTP and Inheritance tell us that in 2013, when the suit was removed, 59 beneficiaries of the retirement plans resided in Texas or Delaware. Citizenship depends not on residence but on domicile, which means the place where a person intends to live in the long run. It is possible to reside in one state while planning to return to a long-term residence in another state. Although it is exceedingly unlikely that all 59 beneficiaries who lived in Texas or Delaware in 2013 were there only temporarily, RTP and Inheritance recognize that

ORIX is entitled to try to prove their transience if it wants. They ask us to remand to the district court for that purpose.

ORIX opposes that proposal, contending that all members of the retirement funds must be citizens of Michigan, because workers generally live within Detroit's borders and cannot commute from Texas or Delaware. This supposes that a "member" for the purpose of *Americold* is whatever the entity calls a member. Like most pension funds, Detroit's distinguish between active employees still contributing to the funds (called "members" by these funds and "participants" by some others) and persons eligible for or currently drawing benefits (usually called "beneficiaries"). ORIX wants us to hold that only current workers count as the pension funds' "members" for the jurisdictional inquiry.

*Americold* observes that no statute defines "members" for the purpose of §1332 but that "we have equated an association's members with its owners or the several persons composing such association." 136 S. Ct. at 1015 (citation and internal quotation marks omitted). The Court thought that equity investors in a real-estate investment trust are its "members" because they reap the gains and suffer the losses of the enterprise—and it did not matter that the trust called those people "shareholders" rather than "members." Similarly it does not matter that Detroit's pension funds call some people "members" and others (often the same people at different times) "beneficiaries." People in their active work lives, the same people after retirement, and family members entitled to pension or other payments on the accounts of current and retired workers, all have financial interests in the pension trusts. It would make little sense to look only at current

workers for the purpose of determining pension funds' citizenships.

In *Americold* and its predecessors (including *Carden*), the Justices treated as members all persons who had the equivalent of equity interests in the association. It did not include banks and other entities that had made debt investments. It might be possible to treat beneficiaries of defined-benefit pension plans as debt investors: their rights depend on contractual promises rather than on the performance of the funds' investments. Drawing a distinction between debt and equity is problematic, however, unless there *is* equity. Stockholders and owners of other equity interests have residual claims in a business; they get whatever is left after everyone else is paid. Detroit's pension funds do not have equity claimants in this sense; the beneficiaries themselves get the profits of the funds' investments (either by an increase in their benefits, or via an increase in the probability of being paid as much as they have been promised). Pension funds are in this respect similar to mutual banks and insurers, merging the roles of debt and equity investors. Perhaps Detroit's taxpayers are residual claimants in the sense that, if the pension funds' investments do well, the taxpayers need to chip in less to make the funds stable. It would not be sensible, however, to treat all taxpayers as "members" of the pension funds. This leaves the employees and beneficiaries as members and correspondingly raises grave doubt about the existence of complete diversity of citizenship.

ORIX contends that "after the parties have spent hundreds of thousands of dollars on attorneys' fees and judgment has been entered[,] remand is not warranted." But in the federal system a defect in subject-matter jurisdiction re-

quires a suit's dismissal, no matter how much the parties have spent and no matter how late in the proceedings the defect comes to light. Thoughtful people, including the members of the American Law Institute, have questioned this approach. See *Study of the Division of Jurisdiction between State and Federal Courts* 64–66, 366–74 (ALI 1969); Charles Alan Wright, *Restructuring Federal Jurisdiction: The American Law Institute Proposals*, 26 Wash. & Lee L. Rev. 185, 204 (1969). But changing the Supreme Court's longstanding approach, which dates to *Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126 (1804), would require a statute. This suit must be dismissed if any participant or beneficiary of either pension fund is a citizen of Texas or Delaware.

ORIX may think it pointless to conduct a detailed inquiry into the domiciles of the 59 persons who resided in these two states in 2013, especially because it would become necessary to consider the possibility that beneficiaries who then resided elsewhere (say, Oklahoma or Maryland) were domiciliaries of Texas or Delaware at the time. But ORIX may choose its own litigation strategy.

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion. If ORIX chooses not to seek an adjudication of the domicile of the 59 persons who in 2013 lived in Texas or Delaware, then the district court must remand this litigation to state court.