**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 1, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ADA CARBON SOLUTIONS (RED
RIVER), LLC, a Delaware limited liability
company,

 Plaintiff Counterclaim Defendant -
 Appellant,

v.

ATLAS CARBON, LLC, a Wyoming
limited liability company,

 Defendant Counterclaimant -
 Appellee.

No. 24-8010

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 1:22-CV-00161-SWS)**

_____

Maxwell N. Shaffer, Leland Shaffer LLP, Denver, Colorado (Thomas D. Leland, Leland
Shaffer LLP, Denver, Colorado and Henry Bakersville, Fox Rothschild LLP, Denver,
Colorado, with him on the briefs), for Plaintiff-Appellant.

Jeffrey S. Pope, Holland & Hart LLP, Cheyenne, Wyoming (Macrina M. Sharpe, Holland
& Hart LLP, Cheyenne, Wyoming, with him on the briefs), for Defendant-Appellee.

_____

Before **HARTZ**, **TYMKOVICH**, and **EID**, Circuit Judges.

_____

**EID**, Circuit Judge.

_____

This matter comes before our Court as an appeal from the district court's award of damages in a contract dispute between two unincorporated entities—ADA Carbon Solutions (Red River), LLC ("ADA"), and Atlas Carbon, LLC ("Atlas"). After careful review of the parties' primary and supplemental briefing, the record, and the district court's opinion, it has become clear that we lack the information necessary to determine whether complete diversity of citizenship existed at the time of filing. We therefore vacate the judgment and remand to the district court for the limited purpose of making the factual findings necessary to resolve whether ADA has met its burden of establishing that the district court has diversity jurisdiction under 28 U.S.C. § 1332.

## I.

On July 25, 2022, Plaintiff-Appellant ADA filed this lawsuit against Defendant-Appellee Atlas in the United States District Court for the District of Wyoming, alleging breach of contract and breach of the implied covenant of good faith and fair dealing under Wyoming law. The details of the dispute are largely immaterial for the purposes of this decision, but, in short, ADA claimed that Atlas breached its contract with ADA for the sale of activated carbon by improperly invoking the "Force Majeure" clause and failing to supply the agreed-upon quantity of carbon to ADA.

Following what ADA viewed as an additional post-filing breach by Atlas, ADA filed an amended complaint, which is the operative pleading in this case. In its amended complaint, ADA asserted that the district court had diversity jurisdiction

2

under 28 U.S.C. § 1332(a)(1), which grants federal district courts subject matter jurisdiction over civil suits between "citizens of different States" where "the matter in controversy exceeds the sum or value of $75,000."

Because both parties are limited liability companies, each unincorporated entity takes the citizenship of all its members. *See Choice Hospice, Inc. v. Axxess Tech. Sols., Inc.*, 125 F.4th 1000, 1008 (10th Cir. 2025). And "if any member of an unincorporated entity is itself an unincorporated entity, then the plaintiff must identify that unincorporated entity's members and those members' citizenship, tracing through however many layers necessary to reach either a corporation or a natural person." *Id.* at 1009 (cleaned up).

In its amended complaint, ADA alleged that its only member is ADA Carbon Solutions (Operations), LLC—a Delaware limited liability company—and that, in turn, ADA Carbon Solutions (Operations), LLC's only member is ADA Carbon Solutions, LLC—also a Delaware limited liability company. ADA further alleged that ADA Carbon Solutions, LLC's only member is Advanced Emissions Solutions, Inc., a corporation formed under the laws of Delaware and with its principal place of business in Colorado. For purposes of diversity jurisdiction, ADA is therefore considered a citizen of both Delaware and Colorado. *See* 28 U.S.C. § 1332(c)(1).

As for Atlas, ADA alleged only that "no member of Atlas is a resident either of the State of Delaware or the State of Colorado." App'x Vol. I at 39. Atlas admitted this allegation but provided no further information about its citizenship. In a later-filed corporate disclosure, Atlas identified itself as having twenty-seven

members—fifteen individuals, eight limited liability companies, one limited partnership, one trust, one estate, and one unclassified entity.  Atlas stated that these members are citizens of Louisiana, Wyoming, Florida, Georgia, and Michigan, collectively.  Therefore, as alleged, Atlas is a citizen of Louisiana, Wyoming, Florida, Georgia, and Michigan.

The district court accepted jurisdiction and, after a bench trial, resolved the dispute in favor of ADA, awarding it $76,000 in damages.  Dissatisfied with the district court's method for calculating damages, ADA appealed the district court's judgment.

During the pendency of the appeal, our Court *sua sponte* identified several potential jurisdictional defects.  First, we observed that, while Atlas identified all of its members, it did "not identify all the members of its LLC members or those members' citizenship," which impeded "the court's ability to confirm that there is complete diversity of citizenship between the parties."  Order, No. 24-8010, at 2 (10th Cir., filed Oct. 28, 2024).  Accordingly, we ordered supplemental briefing, directing Atlas to identify "the members of its LLC members, as well as the citizenship of those members' members, through as many layers as necessary for the court to satisfy itself that it has jurisdiction."  *Id.* at 3.  Atlas responded to this order by identifying the members of its LLC members and listing each member's residence as Louisiana.

Second, we observed that Atlas did not provide adequate information about its remaining non-corporate artificial entity members, including a trust, estate, and

4

limited partnership, once more impeding our ability to ensure complete diversity existed. We again ordered supplemental briefing, directing Atlas to "properly identify[] the citizenship of all its members that are non-corporate artificial entities." Order, No. 24-8010, at 2 (10th Cir., filed Oct. 31, 2024). According to Atlas's second supplemental brief, at least one, and possibly two, of its members—Callais Capital Technology LP and the Frank & Coya Levy Children's Trust—are also citizens of Colorado, a fact that would potentially destroy diversity. Specifically, Atlas relayed that a sub-member of Callais Capital Technology LP, Nicholas Callais, and a beneficiary of Frank & Coya Levy Children's Trust, Brooke Levy, are "resident[s] of Colorado." Aple. Supp. Br. II at 1.

Based on Atlas's second supplemental brief, we issued an order to show cause why the case should not be dismissed for lack of subject matter jurisdiction. Our Court explained that because "Nicholas Callais[,] a resident of Colorado," is a member of Callais Technology LP, "it is clear that the LP"—and thus Atlas—"is a citizen of Colorado." Order, No. 24-8010, at 3 (10th Cir., filed Nov. 5, 2024). Thus, it appeared ADA and Atlas are both citizens of Colorado, meaning complete diversity is lacking. Additionally, our Court explained that although Atlas identified "the names and residencies of the beneficiaries and trustees of the Frank & Coya Levy Children's Trust," Atlas did not provide enough information for the district court to determine the Trust's citizenship. *Id.* at 2. That was so because whether beneficiaries are included for purposes of assessing diversity jurisdiction depends on if the trust is a "traditional" or "business" trust. *Id.* (citing *Americold Realty Tr. v.*

5

*Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016)).  And because one of the beneficiaries, Brooke Levy, is a Colorado resident, the proper classification of the trust could matter for diversity purposes.

ADA responded to our show-cause order, arguing that complete diversity was not lacking.  First, ADA contended that, at the time it filed its amended complaint, Nicholas Callais was actually a citizen of Louisiana, not Colorado, but had moved to Colorado after the suit was filed.  According to ADA, because "[j]urisdiction is determined from the facts at the time of the filing," Callais did not destroy jurisdiction by moving to Colorado after the suit was filed.  Aplt. Response to Show-Cause Order at 5–6 (quoting *Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1308 (10th Cir. 2022)).  Second, ADA argued that the Frank & Coya Levy Children's Trust is a traditional trust, meaning that its citizenship depends only on the trustees' citizenship.  Therefore, ADA argued, it is not relevant that the trust has a beneficiary who is a Colorado resident (Brooke Levy).

Our Court, still unsure of jurisdiction, placed this appeal in abeyance and remanded the case "for the district court to conduct fact finding and determine whether complete diversity exist[ed]."  Order, No. 24-8010, at 7 (10th Cir., filed Nov. 13, 2024).  On remand, the district court made the necessary factual findings and concluded that "at the time th[e] lawsuit was filed . . . complete diversity existed."  Order, No. 22-CV-0161, at 1 (D. Wyo., filed Dec. 23, 2024).  It relied on an affidavit by Nicholas Callais to verify that he was a citizen of Louisiana at the time the lawsuit was filed.  And with respect to the Frank & Coya Levy Children's

6

Trust, the court found that the potentially problematic beneficiary, Brooke Levy, "moved from Louisiana to Colorado on August 17, 2022, shortly after the commencement of this action," making her a "citizen of Louisiana" at the time of filing. *Id.* at 4–5. Therefore, the court found it unnecessary to "address whether the Trust is traditional or business" because under either classification, "the Trust is a citizen of Louisiana." *Id.* at 5 n.3.

We then lifted the abeyance and set the matter for oral argument. The jurisdictional problems, however, did not end there. Before argument, our Court, again acting *sua sponte*, identified yet another impediment to assuring ourselves that complete diversity existed. We noted that "Atlas's citizenship statement identifies EKT Investment ("EKT") as one of Atlas's members and asserts that EKT is a citizen of Louisiana for diversity purposes." Order, No. 24-8010, at 1 (10th Cir., filed Mar. 5, 2025). However, Atlas did not "identify EKT's corporate form or any other information about its citizenship." *Id.* And the district court on remand did not analyze or otherwise find facts relevant to EKT's citizenship. Because we cannot rely on a party's bald assertion about the citizenship of its entity members, *see Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015), we ordered supplemental briefing for a third time, directing Atlas to "identify[] EKT's corporate form and provid[e] enough information for the court to independently determine EKT's citizenship for diversity purposes." Order, No. 24-8010, at 2 (10th Cir., filed Mar. 5, 2025).

7

In its supplemental brief, Atlas identified EKT as a Louisiana limited partnership. Because a limited partnership is a type of unincorporated entity, its citizenship is determined by the citizenship of each of its partners, both general and limited. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990). Accordingly, Atlas included information about its partners. Atlas asserted that EKT's general partner is EKT, Inc., "a Florida Corporation with Louisiana as its principal place of business." Aple. Supp. Br. III at 1. It further asserted that its limited partners are Carolyn Friedler Chipps, Frank Friedler III, Milton Friedler—residents of Georgia, Louisiana, and Mississippi, respectively—and four trusts—the C.H. Friedler GST Exempt Trust, the F.M. Friedler III GST Exempt Trust, the M.T. Friedler GST Exempt Trust, and the M.T. Friedler Non-Exempt Trust.

The trusts, according to Atlas, all have the same trustee, an entity called Bessemer Trust.[1] Atlas, however, was only able to find limited information regarding Bessemer Trust's corporate form. Drawing from Bessemer Trust's website and other publicly available information, Atlas determined that Bessemer Trust was "founded around 1900 in New York" and currently maintains an office in New York. *Id.* Atlas "could not find a Bessemer Trust" listed in either New York, Delaware, or Colorado's business incorporation databases, but did "locate a Bessemer Trust Company of Florida, which matched the names and addresses listed on EKT Investment LP's annual reports to the state of Florida." *Id.* at 1–2. It also

---

[1] The only exception is the M.T. Friedler Non-Exempt Trust, which also has Frank Friedler III as a trustee.

determined that several officers and directors for Bessemer Trust Company of Florida list offices in New York. Based on this information, Atlas asserted that Bessemer Trust is not a Delaware or Colorado corporation and has its principal place of business in New York.

For all four trusts, Atlas noted that they each have "several potential, contingent beneficiaries." *Id.* at 2–3. Atlas, however, "was not able to specifically identify the beneficiaries." *Id.* Nevertheless, Atlas argued that this fact did not impede the Court's ability to assure itself of jurisdiction because "precedent suggests a beneficiary's citizenship matters when the trust is actively involved in litigation rather than a limited partner of a general partnership who is a member of an LLC, which is involved in the litigation." *Id.* at 2 (citing *Conagra Foods, Inc. v. Americold Logistics, LLC*, 776 F.3d 1175 (10th Cir. 2015), *aff'd*, 577 U.S. 378).

ADA disagreed. Under its own reading of the caselaw, "the citizenship for any trust must be determined at the beneficiary level of membership—no different than with respect to other unincorporated associations." Aplt. Supp. Br. III at 5. As for Bessemer Trust, ADA relayed that it was "unable to confirm or deny [Atlas's] factual allegations . . . because ADA does not currently have any discovery tools at its disposal to obtain non-public factual information regarding one of Atlas's members." *Id.*

## II.

Despite this case's complicated factual history, one thing is clear: we lack the information necessary to determine whether complete diversity of citizenship existed

9

at the time of filing. Accordingly, we vacate the judgment and remand this matter to the district court for the limited purpose of making the factual findings necessary to determine whether it has diversity jurisdiction under 28 U.S.C. § 1332.

**A.**

Before turning to the complexities of the present case, it is useful to discuss some general principles of diversity jurisdiction, particularly as they relate to trusts.

Under 28 U.S.C. § 1332(a), federal district courts have jurisdiction over civil suits between "citizens of different States."[2] Diversity jurisdiction requires complete diversity, *Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806), meaning that "no plaintiff may be a citizen of the same state as any defendant," *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). "[F]or purposes of determining the existence of diversity jurisdiction, the citizenship of the parties is to be determined with reference to the facts as they existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569–70 (2004).

When assessing the citizenship of a person, we look to the individual's domicile. *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) ("For purposes of diversity jurisdiction, a person is a citizen of a state if the person is domiciled in that state."). And "domicile is established by physical presence in a

---

[2] The diversity jurisdiction statute also requires that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332(a). Here, the amount in controversy requirement is not in dispute. ADA alleged damages exceeding $75,000 and now seeks at least $1,165,700 in damages on appeal. Moreover, the district court awarded ADA $76,000 in damages after a three-day bench trial. Therefore, the amount in controversy far exceeds the threshold.

place in connection with a certain state of mind concerning one's intent to remain there." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). Or, in other words, domicile consists of "reside[nce]" plus an "inten[t] to remain there indefinitely." *Middleton*, 749 F.3d at 1200.[3]

The citizenship of entities is treated differently. For corporations, Congress has carefully defined their citizenship in the text of 28 U.S.C. § 1332(c)(1): a corporation is "deemed" a citizen of every state "by which it has been incorporated" and of the state "where it has its principal place of business." "But Congress never expanded this grant of citizenship to include artificial entities other than corporations, such as joint-stock companies or limited partnerships." *Americold*, 577 U.S. at 381. Instead, the Supreme Court has adhered to the oft-repeated rule that "[t]he citizenship of an unincorporated entity . . . is derived from the citizenship of all the entity's members." *Choice Hospice*, 125 F.4th at 1008. Accordingly, "if any member of an unincorporated entity is itself an unincorporated entity, then the plaintiff must identify that unincorporated entity's members and those members' citizenship, tracing through however many layers necessary to reach either a corporation or a natural person." *Id.* at 1009 (cleaned up).

---

[3] While "[r]esidence alone is not the equivalent of citizenship," the "place of residence is *prima facie* [evidence of] domicile." *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). However, as we have explained, "the prima facie case flowing from an allegation of residence must be backed up by a district court finding, at some later point in the proceeding, as to the existence of diversity at the time of the filing of the complaint." *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1238 (10th Cir. 2015).

As the Supreme Court has made clear, those principles apply to all unincorporated entities, including trusts. *See Americold*, 577 U.S. at 380–84; *see also Carden*, 494 U.S. at 195 ("In sum, we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members.").

In *Americold*, the Supreme Court confronted the question of how to determine the citizenship of a "real estate investment trust" organized under Maryland law. 577 U.S. at 379. Its analysis was straightforward. It explained that because the trust "is not a corporation, it possesses its members' citizenship"—just like any other unincorporated entity. *Id.* at 382. In doing so, it explicitly rejected the argument that "anything called a 'trust' possesses the citizenship of its trustees alone." *Id.* The Court clarified that the holding of *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980)—that the jurisdictional citizenship of a trustee filing a lawsuit or being sued in his own name is the state where he is domiciled—"coexists with" the rule "that when an artificial entity is sued in *its* name, it takes the citizenship of each of its members." *Americold*, 577 U.S. at 382–83 (emphasis in original).

The Court did, however, distinguish between "traditional" and "non-traditional trusts" (also called "business trusts") to further clarify the contours of a trust's citizenship. Because "[t]raditionally, a trust was not considered a distinct legal entity, but a 'fiduciary relationship' between multiple people," legal proceedings "involving a trust were brought by or against the trustees in their own name." *Id.* at 383. Given that the trustees were the only ones involved in the suit, their citizenship

was "all that matter[ed] for diversity purposes." *Id.* Courts therefore had no reason "to determine [a traditional trust's] membership." *Id.*

The citizenship of a traditional trust, therefore, depends only on the citizenship of its trustees. Put differently, a traditional trust is not an entity at all and so it would make little sense to treat such a trust as an entity and apply the unincorporated entity membership rule to determine jurisdictional citizenship. Rather, *Americold* instructed lower courts to treat traditional trusts as they were historically treated (as fiduciary relationships) and ascertain their citizenship with reference to their trustees—the individuals who could actually be "haled into court." *Id.*

But the same logic does not apply to business trusts—which, by nature of state law, are not treated as fiduciary relationships. Instead, business trusts have their own juridical status entirely separate from their trustees or beneficiaries. As distinct legal entities which can be haled into court, their citizenship is what matters for jurisdiction. In other words, the trustees are no longer the sole entities implicated when a trust is involved in a proceeding; the trust itself plays a role. Therefore, the jurisdictional unit is the business trust itself—as is true of any other unincorporated entity.

In *Americold*, the Court applied these principles to classify the trust at issue. The Court explained that Maryland law "treats a real estate investment trust as a 'separate legal entity' that itself can sue or be sued" as opposed to a fiduciary relationship. *Id.* (quoting Md. Code Ann., Corps. & Ass'ns §§ 8-102(2), 8-301(2)). As such, the real estate investment trust at issue there sat clearly on the non-

13

traditional side of the divide, and consequently, the Court treated it as any other unincorporated entity, applying the rule "that it possesses the citizenship of all its members." *Id.* Looking to Maryland law, the Court determined that "for purposes of diversity jurisdiction, Americold's members include its shareholders" because they possess ownership interests and votes in the trust. *Id.* at 382.

The takeaways of *Americold* are many. First, "when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes." *Id.* at 383. Second, a traditional trust only takes the citizenship of its trustees, whereas a business trust takes the citizenship of all its members. Third, to determine whether a trust is traditional, courts must look to the laws of the state where the trust is formed, with the primary consideration being whether the trust exists as a fiduciary relationship or as a separate legal entity.[4] *Id.* Fourth, and relatedly, an entity's membership is not "limit[ed]" "to its trustees just because the entity happens to call itself a trust." *Id.* And fifth, to determine a non-traditional trust's members, courts must again look to state law to ascertain who is "in the same position" as those who

---

[4] That is not to say that juridical person status is the only relevant consideration in the classification of a trust. A few of our sister circuits have considered other factors in addition to the trust's entity status, including "the purpose of the trust." *See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 40 (3d Cir. 2018) (explaining that "a traditional trust facilitates a donative transfer, while a business trust implements a bargained-for exchange" (citation omitted)); *see also Wang ex rel. Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 494–95 (D.C. Cir. 2016). We take no position on the correct test for distinguishing between a traditional and business trust. However, we do note that *Americold* appeared to treat the fact that the trust is a separate legal entity under state law as dispositive when it concluded that the real estate investment trust was a non-traditional trust.

14

have been designated members of other unincorporated entities, such as partners, shareholders, or others with "ownership interests." *Id.* at 382.

**B.**

With those principles in mind, we turn to the specifics of ADA's diversity-jurisdiction suit against Atlas. As discussed above, Atlas is a limited liability company with twenty-seven members. One of those members, EKT, is a limited partnership with its own sub-members. Therefore, before we can address the merits of the dispute, we must identify the citizenship of all of EKT's members to "assure ourselves" that complete diversity existed at the time of filing. *Abbott v. Perez*, 585 U.S. 579, 594 (2018).

But, as things now stand, we lack the information necessary to make such a determination. Atlas identified EKT's limited partners as including four trusts—the C.H. Friedler GST Exempt Trust, the F.M. Friedler III GST Exempt Trust, the M.T. Friedler GST Exempt Trust, and the M.T. Friedler Non-Exempt Trust. It provided the names of the trustees but admitted it "was not able to specifically identify the beneficiaries." Aple. Supp. Br. III at 2–3. Neither party, moreover, provided any information about the proper classification of the four trusts under state law. Without information about the trusts' designations or their beneficiaries, it is impossible to determine their respective citizenships. If these trusts are traditional trusts, they take the citizenship of only their trustees. But if these trusts are non-traditional trusts, then they take the citizenship of all of their members—like any unincorporated entity would—which may or may not include the trusts' beneficiaries, depending on the

15

particularities of the trusts under applicable state law.[5]  Consequently, we have no way of knowing the trusts' citizenships.  We therefore cannot be sure that ADA is completely diverse from Atlas.

ADA—who bears the ultimate burden of establishing complete diversity as the party seeking to invoke federal jurisdiction, *see Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010)—agrees.  At oral argument, ADA took the position that, based on the information currently in the record, it is impossible to "determine . . . whether [subject matter jurisdiction] existed" at the time of filing.  Oral Arg. Audio at 4:13–17.  Although it wished to avoid unwinding three years of litigation that resulted in a favorable judgment, it acknowledged that "the appropriate thing to do here is to remand to the district court to make the appropriate factual findings."  *Id.* at 4:29–36.

Atlas, for its part, argues that the lack of information regarding the trusts' beneficiaries is not fatal to the jurisdictional inquiry because "a beneficiary's citizenship [only] matters when the trust" is a named party.  Aple. Supp. Br. III at 2.[6]

---

[5] At this juncture, we take no position on how to determine the membership of non-traditional trusts.  We lack briefing as well as a lower court decision on the issue and therefore find it prudent to leave it to the district court to consider in the first instance, if necessary.  We do note that the Supreme Court in *Americold* looked to state law to determine who the business trust's members are and determined that the trust's members included its beneficiaries.  Therefore, at the very least, beneficiaries of non-traditional trusts are relevant to the jurisdictional analysis in some circumstances.

[6] At oral argument, Atlas's counsel appeared to soften its stance, stating that Atlas "ha[s] no reason to disagree" with ADA regarding jurisdiction.  Oral Arg. Audio at 27:48–50.  Atlas, however, did not take a firm position on whether remand is necessary and alluded to a potential difference in how to classify trusts depending on whether the trust is a named party.  We therefore operate under the assumption

According to Atlas, *Americold*'s rules for determining the citizenship of a trust apply only when the trust is suing or being sued. Thus, Atlas argues, because the four trusts at issue here are members of a member as opposed to named parties, their citizenships should be determined only by reference to their trustees. But that position contradicts well-established precedent.

For one, "[t]he rules for determining citizenship do not change depending on whether a trust is embedded within another business entity." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 41 (3d Cir. 2018). As we have held, "[t]he citizenship of an unincorporated entity . . . is derived from the citizenship of all the entity's members." *Choice Hospice*, 125 F.4th at 1008. That principle applies whether the unincorporated entity is a named party or is itself a member of another unincorporated entity. *See id.* (determining the citizenship of an LLC—who itself was a member of the named party—by reference to its own members). Thus, contrary to Atlas's suggestion, we do not disregard a trust's members—which may include its beneficiaries—merely because the trust is a member of a separate unincorporated entity involved in the suit. Rather, as every single one of our sister circuits to address the issue has concluded, a trust takes the citizenship of all its members regardless of the trust's position within an unincorporated entity's ownership structure. *See GBForefront*, 888 F.3d at 41 (applying the same citizenship rule to trusts "embedded within another" unincorporated entity as would apply to

---

that Atlas did not change its position at oral argument and address the arguments it made in its supplemental brief.

17

trusts who are parties to the proceeding); *BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 697 (1st Cir. 2023) (doing the same in the context of a trust who was a member of an LLC); *RTP LLC v. ORIX Real Est. Cap., Inc.*, 827 F.3d 689, 692 (7th Cir. 2016) (concluding that the trusts at issue—who themselves were members of the LLC plaintiff—"have the citizenships of their own members"); *Alliant Tax Credit 31 v. Murphy*, 924 F.3d 1134, 1143 & n.5 (11th Cir. 2019) (applying the *Americold* citizenship rule to trusts who were "members of a limited-liability company that is a member of another limited-liability company that is a partner of a limited partnership that in turn is a member or partner of each of the five Plaintiffs in th[e] case").

Moreover, Atlas's alternative interpretation runs headlong into at least two Supreme Court decisions. Limiting the citizenship of a business trust to that of its trustee would contradict *Americold*'s statement that a trust's membership should not be "limit[ed]" "to its trustees just because the entity happens to call itself a trust." 577 U.S. at 383. And such a trustee-only rule would defy *Carden*'s holding that a court cannot "consult the citizenship of less than all of the entity's members" when determining "the citizenship of an artificial entity." 494 U.S. at 195. Therefore, we reject Atlas's position and conclude that the lack of information about the trusts' classification and their beneficiaries impedes our ability to assure ourselves of jurisdiction.

Even looking past the trusts' beneficiaries, the citizenship of the trusts' shared trustee—Bessemer Trust—remains unknown. Atlas, acting without the help of judicial process, was only able to gather that the trustee has an office in New York

18

with several employees.  It did not provide any relevant information about the trustee's corporate form beyond the fact that there exists a "Bessemer Trust Company of Florida, which matche[s] the names and addresses listed on EKT Investment LP's annual reports to the state of Florida."  Aple. Supp. Br. III at 1–2.  But, without more, we would have to speculate to conclude that Bessemer Trust is the same entity as Bessemer Trust Company of Florida, a corporation incorporated in the state of Florida.  And even if we engaged in such speculation, the mere presence of an office in New York is insufficient to establish New York as Bessemer Trust's principal place of business.  *See Hertz*, 559 U.S. at 97.  Therefore, we do not possess the requisite information to determine Bessemer Trust's citizenship.  Without the trustee's citizenship, we cannot ascertain the trusts' citizenships and, in turn, we cannot be sure that Atlas, through its members, is completely diverse from ADA.

## C.

We therefore remand this matter to the district court for the limited purpose of making the factual findings to determine whether it has subject matter jurisdiction.  On remand, the district court should analyze each of ADA and Atlas's members as well as those members' members, tracing "through however many layers necessary to reach either a corporation or a natural person."  *Choice Hospice*, 125 F.4th at 1009 (cleaned up).  With respect to the four trust members of EKT Investment LP, the court should assure itself that the trusts' trustee—Bessemer Trust—is completely diverse from ADA.  If so, the court should then determine whether each trust is a traditional or non-traditional trust under state law.  If any trust is a traditional trust,

19

then that trust takes the citizenship of its trustee.  If any trust is a non-traditional trust, then the court must determine who its members are again looking to state law. We intimate no view on the proper resolution of any of these questions.  Instead, we leave it to the district court to make the jurisdictional finding on remand.  We take this opportunity to remind the parties that residence is not equivalent to citizenship and that the ultimate burden of persuasion rests with ADA—the party invoking federal jurisdiction.

## III.

For the foregoing reasons, we VACATE the judgment and REMAND this matter to the district court to determine whether it has subject matter jurisdiction.  If it does, it should re-enter the judgment; if not, it should dismiss the case for lack of jurisdiction.